IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OHIO MIDLAND, INC.,** *et al.* : | |
| : | |
| Plaintiffs, : | Case No. C2-05-1097 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| **GORDON PROCTOR,** Director of : | Magistrate Judge Abel |
| Ohio Department of Transportation, *et al.*, : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure by Defendant Joe Manchin III ("Manchin"), in his capacity as the Governor of West Virginia. For the reasons set forth herein, the Court **GRANTS** Defendant's Manchin's Motion.

### II. STATEMENT OF FACTS[1]

### A. Background

On September 12, 1922, the United States Congress authorized, by House Bill 11901, to construct, maintain and operate a bridge and approaches across the Ohio River in order to connect the City of Benwood, WV and the City of Bellaire, Ohio. Complaint ¶ 3. In issuing the House Bill, Congress expressly reserved to itself the right to alter, amend or repeal its authorization. *Id*. The bridge is commonly referred to as the "Bellaire Bridge" (hereinafter, "the

---

[1]In his Motion to Dismiss, Defendant Manchin assumes that all allegations in the Complaint are true. *See* Def.'s Motion at 2.

Bridge"). *Id*.

The Interstate Bridge Company ("IBC") constructed, operated and maintained the Bridge as a "toll bridge" until 1991, at which time the Ohio Department of Transportation ("ODOT"), having the right of appropriation, purchased the existing bridge ramp on the Ohio side of the river from IBC for the construction of Ohio Route 7. *Id*. ¶ 4.

Defendants ODOT and the IBC allegedly entered into two agreements regarding the Bridge. *See* Complaint ¶ 10-11. First, on December 5, 1990, ODOT and IBC entered the first agreement (hereinafter, "Agreement #1"), a contract for the sale of the real property constituting the area of the existing ramp on the Ohio side of the river, which made no provision for any damages to the residue of the Bridge owned by IBC. *Id*. ¶ 10. Second, on January 7, 1991, ODOT and IBC executed the second agreement (hereinafter, "Agreement #2"), a contract through which both parties alleged payment for the real estate and damages to the residue of the Bridge. *Id*. ¶ 11. Agreement #2 allegedly provided for the exact amount of compensation as Agreement #1, which, in turn, provided compensation for the land only. *Id*. ¶ 11.

On March 22, 1991, the remaining portion of the Bridge, and the assets of IBC were purchased by Plaintiff, Roger Barack ("Barack"), and all assets were assigned to him by bill of sale. *Id*. Subsequent to the aforementioned asset transfer, IBC became a defunct corporation. *Id*. According to Plaintiffs' Complaint, when Barack purchased the Bridge, ODOT was working on plans to re-connect the Ohio side of the Bridge to the main part of the Bridge, so that it could re-open to traffic. Complaint ¶ 5. ODOT later decided, however, that it would neither re-connect the Bridge in Ohio, nor allow Plaintiffs to build a ramp to the Bridge. *Id*. ¶ 7. Thereafter, Barack assigned any and all interests he had to the remaining Bridge assets to co-

Plaintiff, Ohio Midland, Inc. ("Ohio Midland"). *Id*. ¶ 8.

The U.S. Coast Guard (the "Coast Guard") recently adjudged the Bridge to be an "unreasonable obstruction to navigation," and, accordingly, it has issued orders for Plaintiff Barack to remove the Bridge. Complaint ¶ 9. Further, the Coast Guard has issued orders for the payment of $300,000.00 plus interest and administrative costs as civil penalties for Barack's alleged failure to comply with its order of removal.[2]

### B. Procedural History

On December 5, 2006, Barack and Ohio Midland (collectively, "Plaintiffs") filed their initial complaint (the "Complaint") against the following defendants: (1) Gordon Proctor, in his official capacity as Director of ODOT; (2) ODOT; (3) Jim Spain, in his official capacity as Deputy Director of ODOT District 11 (collectively, "ODOT Defendants"); (4) Admiral Thomas H. Collins ("Collins"), in his capacity as Commandant of the Coast Guard; (5) Joe Manchin III ("Manchin"), in his capacity as Governor of West Virginia; (6) Norfolk Southern Railway Co. ("NSR"), care of CT Corp. System, its statutory agent; and (7) the City of Benwood Mayor's Office, care of Mayor Edward M. Kuca, Jr. ("Kuca") (collectively, "Defendants"). *See* Complaint ¶ 2.[3]

Plaintiffs assert the following eight claims against the various Defendants: (1) Plaintiffs

---

[2]Barack appealed the Coast Guard's administrative order, and the case, which is currently pending in Federal Court, has been consolidated with the instant case. *See Roger Barack v. U.S. Coast Guard Commandant,* Case No. C2-05-1044.

[3]Plaintiffs assert their claims against Defendants Collins, Manchin, and Kuca in their capacities as the Commandant of the Coast Guard, the Governor of West Virginia, and the Mayor of Benwood, West Virginia, respectively. Throughout this Opinion and Order, therefore, in referencing Collins, Manchin, and Kuca , by extension, the Court references Defendants Coast Guard, West Virginia, and City of Benwood.

bring Claim 1 against the ODOT Defendants alleging that because ODOT did not pay additional consideration when it entered into Agreement #2 with IBC, Agreement #2 is void, entitling Plaintiffs to money damages for the residue and/or remainder of the Bridge caused when ODOT allegedly "took" the Bridge under Agreement #1; (2) Plaintiffs bring Claim 2 against the ODOT Defendants and allege that ODOT breached Agreement #1, depriving Plaintiffs of a fair opportunity to either remove the salvage materials from the Bridge surroundings or to account for the fair market value of those materials, entitling Plaintiffs to money damages; (3) Plaintiffs bring Claim 3 against the ODOT Defendants and assert that ODOT has a duty and obligation to develop specifications for and to build a replacement ramp over State Route 7 to allow Plaintiffs to continue use of the Bridge as a toll bridge; (4) Plaintiffs bring Claim 4 against the ODOT Defendants and assert that ODOT's failure to replace the ramp unilaterally closed the Bridge for traffic without federal permission in violation of House Bill 11901, depriving Plaintiffs of their civil rights under the Commerce Clause pursuant to 42 U.S.C. § 1983; (5) in Claim 5, which Plaintiffs assert against Manchin, Kuca, Collins, and NSR, Plaintiffs claim that should the Court choose not to compel ODOT to construct a ramp to keep the Bridge open, the Court should alternatively deem the Bridge "abandoned" and order that, pursuant to Ohio and West Virginia laws, the remainder of the Bridge must revert to the owners of the land; (6) in Claim 6, Plaintiffs argue that if the Court determines under Claim 5 both that the Bridge is abandoned and that the remainder of the Bridge must revert to the owners of the land, the Court should enjoin the Coast Guard from enforcing its order that Plaintiffs either remove the remainder of the Bridge or pay penalties for failing to do so; (7) in Claim 7, Plaintiffs contend that should the Court decide *not* to enjoin the Coast Guard as requested in Claim 6, the Court should order ODOT to pay the

necessary penalties and costs for the Bridge's removal; (8) finally, in Claim 8, Plaintiffs assert that because they disagree with the Coast Guard as to whether the Coast Guard has jurisdiction over the Bridge, the Court should make a judicial interpretation of the extent of the Coast Guard's authority. *See* Complaint ¶¶ 11-18.

Plaintiffs request the following relief. First, Plaintiffs ask the Court to issue an order forcing ODOT to construct a vehicular ramp over Ohio State Route 7 to permit the use of the Bridge for vehicular traffic and enjoining ODOT from impeding the Plaintiffs' use of the Bridge as a toll bridge. Complaint at 7, ¶ 1. Second, Plaintiffs request that if the Court orders ODOT to construct a ramp as per its request, Plaintiffs should be awarded damages for their loss of toll profits from the date of removal of the ramp to the date of completion of the new ramp and the reopening of the bridge to vehicular traffic. *Id*. ¶ 2. Third, Plaintiffs contend that should the Court choose *not* to order Defendant ODOT to construct a ramp over Ohio State Route for vehicular traffic, it should alternatively order ODOT to file appropriation proceedings to determine the amount of damages due to Plaintiffs for the remainder of the Bridge in their possession at the time ODOT allegedly "took" the ramp from Plaintiffs. *Id*. ¶ 3. Fourth, Plaintiffs request money damages in the amount of $500,000.00 for the alleged fair market value of the salvage materials of the ramp, and in the amount of $5,000,000.00 for their claim that ODOT violated their civil rights. *Id*. ¶ 4. Finally, Plaintiffs request any further relief as the nature of the case may require. *Id*. ¶ 9.

Claim 5, the claim which asks the Court to allow Plaintiffs to abandon the Bridge so that ownership of the Bridge may revert back to the landowners, is the only claim that Plaintiffs assert against Defendant Manchin. On December 23, 2005, Defendant Manchin brought the

Motion to Dismiss Claim 5 currently at issue.  The Motion is now ripe for this Court's review.

## IV. LAW AND ANALYSIS

Defendants have asserted that Claim 5 must be dismissed pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and lack of subject matter jurisdiction under.  Upon looking at the facts, however, this Court finds that Plaintiffs lack standing to assert Claim 5 because it is not yet ripe.  *Regional Rail Reorg. Act Cases,* 419 U.S. 102, 138 (1974) (even when a ripeness question in a particular case is prudential, the court may raise it on its own motion, and "cannot be bound by the wishes of the parties").

The concept of standing to sue is at the core of the "case-or-controversy" requirement of Article III of the Constitution.  *See Allen v. Wright*, 468 U.S. 737, 751 (1983).  The Supreme Court has consistently held that standing has three elements which a party invoking federal jurisdiction (in this case, Plaintiffs) must establish.  *Id*.

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly. . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).  The Supreme Court has noted that the "ripeness doctrine" is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. *See, e.g., Buckley v. Valeo,* 424 U.S. 1 (1976); *Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588 (1972). Under the "ripeness doctrine" "a claim resting upon " 'contingent future events that may

not occur as anticipated, or indeed may not occur at all,' " is not fit for adjudication." *Texas v. U.S.*, 523 U.S. 296 (1998) (whether Texas would impose sanctions was contingent on a number of factors; therefore, the plaintiffs' request for sanctions was not yet ripe).

In this case, the Court finds that Plaintiffs' Claim 5, rather than being "actual or imminent," is purely conjectural, and, therefore, not yet ripe.  As noted *supra*, Plaintiffs bring Claims 1 through 4 of their Complaint against ODOT Defendants requesting that the Court find ODOT Defendants to be in breach of Agreements #1 and #2, and asking the Court for money damages to compensate them for the residue of the Bridge.  Further, Plaintiffs request that the Court order ODOT Defendants to replace the ramp over State Route 7 to allow Plaintiffs to continue to use the Bridge as a toll bridge.  *See* Complaint ¶¶ 11-14.  Claim 5, which Plaintiffs assert against Defendants Manchin, Kuca, Collins, and NSR, states that, "*if Defendants ODOT are not compelled to construct a ramp to keep the [B]ridge open, as required by law, and the [B]ridge is deemed abandoned* **then** the remainder of the bridge as a structure should be ordered to revert to the owners of the land pursuant to Ohio and West Virginia Laws." *See id*. ¶ 15 (emphasis added).  Looking at the plain language of Plaintiffs' Claim 5, therefore, Claim 5 only becomes ripe if the Court chooses *not* to compel the ODOT Defendants to rebuild a ramp and/or to deem the Bridge abandoned.  Thus, it is evident that Claim 5 depends on this Court's decision regarding Claims 1 through 4, and such contingent claims are not fit for adjudication.  *See Texas*, 523 U.S. at 296.  Accordingly, the Court **GRANTS** Defendant Manchin's Motion to Dismiss Plaintiffs' Claim 5, and dismisses Defendant Manchin as a Defendant in this matter.

As set forth in the Statement of Facts, Plaintiffs assert Claim 5 against Defendant Manchin, in addition to Defendants Kuca, NSR, and Collins.  Claim 5 is the only Claim which

Plaintiffs assert against Defendants, Kuca and NSR.  Hence, as previously discussed in regards to Defendant Manchin, because this Court dismissed Claim 5, Defendants Kuca and NSR are also dismissed as Defendants in this matter.

## V. CONCLUSION

For the foregoing reasons, Defendant's Manchin's Motion to Dismiss Claim 5 is **GRANTED**.  Claim 5 is hereby dismissed, and Defendants Manchin, Kuca, and NSR are hereby dismissed as Defendants.  Defendant Kuca's Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) through (6) of the Federal Rules of Civil Procedure and Defendant NSR's Motion for Summary Judgment are now **MOOT**.

**IT IS SO ORDERED.**

                                            s/Algenon L. Marbley
                                            **ALGENON L. MARBLEY**
                                            **UNITED STATES DISTRICT JUDGE**

**DATED: June 13, 2006**