IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OHIO MIDLAND, INC., *et al.* : | |
| : | |
| Plaintiffs, : | Case No. C2-05-1097 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| GORDON PROCTOR, Director of : | Magistrate Judge Abel |
| Ohio Department of Transportation, *et al.*, : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court pursuant to Plaintiffs' Motion for Reconsideration and Plaintiffs' Motion for Leave to File Instanter First Amended Complaint. For the reasons set forth herein, the Court **DENIES** Plaintiffs' Motion for Reconsideration and **DENIES** Plaintiffs' Motion for Leave to File Instanter First Amended Complaint.

**II. BACKGROUND**

**A. Facts**

On September 12, 1922, the United States Congress authorized the construction, operation and maintenance of a bridge across the Ohio River in order to connect the City of Benwood, West Virginia and the City of Bellaire, Ohio. Congress expressly reserved to itself the right to alter, amend or repeal its authorization. The bridge was opened to traffic in 1926 and is commonly referred to as the "Bellaire Bridge" (hereinafter, the "Bridge").

The Interstate Bridge Company ("IBC") constructed, operated and maintained the Bridge as a toll bridge until 1991, at which time the Ohio Department of Transportation ("ODOT")

purchased the existing bridge ramp on the Ohio side of the river from IBC and demolished the ramp for the construction of Ohio Route 7.

On March 22, 1991, Plaintiff, Roger Barack ("Barack") purchased the remaining portion of the Bridge from IBC, intending to continue the operation of the Bridge as a toll bridge to serve the Bellaire and Benwood communities. When Barack purchased the Bridge, he purportedly believed that ODOT was working on plans to reconnect the Ohio side of the Bridge to the main part of the Bridge so that the Bridge could reopen to traffic. ODOT later decided, however, that it would neither reconnect the Bridge in Ohio, nor allow Barack to build a ramp to the Bridge. Barack then assigned any and all interests he had in the remaining Bridge assets to co-plaintiff, Ohio Midland, Inc. ("Ohio Midland").

The U.S. Coast Guard (the "Coast Guard") adjudged the Bridge to be an "unreasonable obstruction to navigation," and, accordingly, it issued orders for Plaintiff Barack to remove the Bridge. Further, the Coast Guard issued orders for the payment of $300,000 plus interest and administrative costs as civil penalties for Barack's alleged failure to comply with its order of removal.[1]

### B. Procedural History

On December 5, 2006, Barack and Ohio Midland (collectively, "Plaintiffs") filed their initial complaint (the "Original Complaint"), consisting of eight claims, against the following defendants: (1) ODOT; Gordon Proctor, the Director of ODOT; and Jim Spain, the Deputy Director of ODOT District 11 (collectively, "ODOT Defendants"); (2) Admiral Thomas H.

---

[1] Barack appealed the Coast Guard's administrative order, and the case, which is currently pending in Federal Court, has been consolidated with the instant case. *See Roger Barack v. U.S. Coast Guard Commandant*, Case No. C2-05-1044.

Collins ("Collins"), Commandant of the Coast Guard; (3) Joe Manchin III ("Manchin"), Governor of West Virginia; (4) Norfolk Southern Railway Co. ("NSR"), care of CT Corp. System, its statutory agent; and (5) the City of Benwood Mayor's Office, care of Mayor Edward M. Kuca, Jr. ("Benwood") (collectively, "Defendants").

In general, Plaintiffs assert Claims 1 through 4 of the Original Complaint against ODOT Defendants for (1) damages to the remainder of the Bridge caused by ODOT's destruction of the Ohio-side ramp; (2) the fair market value of salvage materials from the area of the ramp acquired by ODOT; (3) damages caused by ODOT's failure to replace the ramp in order to allow the Bridge to reopen; and (4) damages due to ODOT's impeding travel over the Bridge without authorization expressly reserved by Congress. Plaintiffs assert in Claim 5 that, should the Court choose not to compel ODOT Defendants to replace the ramp, the Court should alternatively find the Bridge "abandoned" by the Plaintiffs, and conclude that, pursuant to Ohio and West Virginia laws, the remainder of the Bridge would revert to the owners of the land. Plaintiffs assert Claim 5 against Defendants Manchin, Benwood, Collins and NSR on the basis that the State of West Virginia, the City of Benwood, the U.S. Coast Guard, and NSR may each have a propriety interest in the land upon which the Bridge is built and may, therefore, be responsible for its removal. In Claims 6 and 7, Plaintiffs maintain that if the Court concludes that the Bridge is "abandoned," Plaintiffs no longer own the Bridge and the Court should enjoin the Coast Guard from ordering Plaintiffs to remove the Bridge or pay the civil penalties, or alternatively, order ODOT Defendants to pay such removal costs and penalties. Finally, in Claim 8, Plaintiffs asserted that because they disagree with the Coast Guard as to whether the Coast Guard has jurisdiction over the Bridge, the Court should make a judicial interpretation of the extent of the

Coast Guard's authority.

Plaintiffs request various forms of relief in their Original Complaint. First, Plaintiffs ask the Court to (a) order ODOT Defendants to construct a vehicular ramp over Ohio State Route 7 to permit the use of the Bridge for vehicular traffic and (b) enjoin ODOT Defendants from impeding Plaintiffs' use of the Bridge as a toll bridge. Second, Plaintiffs request that should the Court order ODOT to construct a ramp, Plaintiffs should also be awarded damages for their loss of toll profits from the date of removal of the ramp to the date of completion of the new ramp and the reopening of the bridge to vehicular traffic. Third, Plaintiffs contend that should the Court choose *not* to order ODOT to construct a new ramp, the Court should alternatively order ODOT to file appropriation proceedings to determine the amount of damages due to Plaintiffs for the remainder of the Bridge in their possession at the time ODOT allegedly "took" the economic use of the remainder of Bridge when it acquired the Ohio-side ramp. Fourth, Plaintiffs request money damages for the salvage materials of the ramp, and for their claim that ODOT violated their civil rights by impeding traffic over the Bridge without federal approval. Fifth, should the Court not order ODOT to construct a new ramp, Plaintiffs request a declaration that the Bridge has been abandoned and is now property of the landowners.

Claim 5, which asks the Court to find that Plaintiffs abandoned the Bridge such that the Bridge now belongs to the landowners, was the only claim that Plaintiffs asserted against Defendants Manchin, Benwood and NRS. On December 23, 2005, Defendant Manchin brought a Motion to Dismiss Claim 5. On June 13, 2006, this Court granted Manchin's Motion to Dismiss, finding Claim 5 to be contingent upon the outcome of Claims 1 through 4, and thus not ripe for review. Because Claim 5 was the only action brought against Manchin, Benwood and

NRS, this Court also dismissed them as defendants in this matter.

On June 29, 2006, Plaintiffs filed a Motion for Reconsideration of this Court's June 13th order. Additionally, Plaintiffs filed a Motion for Leave to File Instanter First Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a), seemingly in an effort to cure the ripeness defect of Claim 5. Defendants Manchin and NSR filed Responses in Opposition to both of Plaintiffs' motions. Defendant Collins and the ODOT Defendants filed Responses in Opposition to Plaintiffs' Motion for Leave to File Amended Complaint. Accordingly, both of Plaintiffs' motions are now ripe for this Court's review.

### III. STANDARD OF REVIEW

#### A. Motion for Reconsideration

As a general principle, motions for reconsideration are looked upon with disfavor unless the moving party demonstrates one of the following: (1) a manifest error of law; (2) newly discoverable evidence which was not previously available to the parties; or (3) intervening change of controlling law. *Meekison v. Ohio Dep't of Reh. & Corr.*, 181 F.R.D. 571, 572 (S.D. Ohio 1998) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir. 1985)). "Neither the passage of time, during which the legal landscape did not change, nor a different spin on the same arguments, is a proper basis for a motion for reconsideration." *Id*. Furthermore, "mere dissatisfaction with a Court's ruling is an inappropriate and insufficient ground to support a motion for reconsideration." *Id*. This doctrine reflects the sound policy that litigation should not be subject to "instant replays" but rather decided and put to rest. *See Petition of U.S. Steel Corp.,* 479 F.2d 489, 494 (6th Cir. 1973).

**B. Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Forman v. Davis*, 371 U.S. 178, 182 (1962). While the Sixth Circuit is "very liberal" in permitting amendments, certain factors may warrant the denial of a motion to amend: undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance fo the amendment, and a futility of the amendment. *United States v. The Limited, Inc.*, 179 F.R.D. 541, 550 (S.D. Ohio 1998).

Because Plaintiffs seek the same remedy through their Motion for Reconsideration and Motion for Leave to Amend,[2] both motions will be considered together in the following discussion.

**IV. ANALYSIS**

**A. Motion for Reconsideration**

Plaintiffs ask the Court to reconsider its June 13, 2006 order, in which the Court found that Plaintiffs lack standing at this time to assert Claim 5 of the Original Complaint, dismissed Claim 5 as not ripe, and dismissed Defendants Manchin, Benwood and NSR. Plaintiffs urge the Court to reconsider its decision in light of Plaintiffs' Proposed Amended Complaint.

Plaintiffs assert that because the Court raised the ripeness issue *sua sponte*, Plaintiffs were not given an opportunity to brief the issues of standing and ripeness. Plaintiffs contend that

---

[2]Plaintiffs explained that they filed both motions as a cautionary measure in hopes that Claim 5, and the corresponding defendants, would be reinstated either through the motion for reconsideration or the motion for leave to amend. Pl's Motion for Reconsideration at 2, n.1.

had they been put on notice that the Court may make such a determination, they could have amended Claim 5 of the Original Complaint to read as it now does in the Proposed Amended Complaint. The Original Claim 5 stated, "[I]f Defendants ODOT are not compelled to construct a ramp to keep the bridge open . . . and the bridge is deemed abandoned then the remainder of the bridge as a structure should be ordered to revert to the owners of said land." The Proposed Amended Complaint seeks to avoid the Court's order by rewording Claim 5, which now reads, "Plaintiffs abandoned the residue of the Bridge, and said residue is a permanent fixture merged with the land upon which it is built, and ownership of the residue reverted to the owners of said land." Proposed Amended Complaint ¶ 43. Plaintiffs assert that Claim 5 should be considered "in the alternative" to the other claims listed by Plaintiffs, which ask the court to order ODOT Defendants to reconstruct the Ohio-side ramp or pay Plaintiffs for "taking" the economic value of the use of the Bridge. Plaintiffs rely on Federal Rule of Civil Procedure 8(e), as authority for filing pleadings in the alternative. Plaintiffs' reliance is misplaced.

Even if the Court considers Plaintiffs' Proposed Amended Complaint to determine whether to reconsider the Court's order–on the theory that Plaintiffs are asserting "new facts" through the Proposed Amended Complaint that justify reconsideration–the Court finds that the mere rewording of Claim 5 is insufficient to justify reconsideration. Again, "a different spin" on the same arguments is not a proper basis for a motion for reconsideration. *Meekison*, 181 F.R.D. at 572. The facts in the Proposed Amended Complaint are, in reality, no different from the facts in the Original Complaint. In both complaints, Plaintiffs simultaneously (a) maintain ownership over the Bridge by asking the Court to order ODOT Defendants to rebuild the ramp and refrain from impeding further vehicular traffic across the Bridge and (b) ask the Court to declare that

Plaintiffs have abandoned the Bridge and that, as a fixture, the Bridge has reverted back to the landowners. The Proposed Amended Complaint merely changes the wording of the facts to imply that Plaintiffs have already abandoned the Bridge. Yet Plaintiffs offer no facts–*particularly facts that were not previously available to the parties*–in support of this legal theory. Plaintiffs simply changed the tense of the verbs so that it appears that Plaintiffs have already abandoned the property. The Court finds this rewording does not add facts, but simply puts a "spin" on the old ones. Because Plaintiffs fail to: (1) offer additional facts which were not previously available to the parties; (2) demonstrate a manifest error of law; or (3) present an intervening change of controlling law, reconsideration is improper.

### B. Motion for Leave to Amend

Having decided the Motion for Reconsideration is not proper, the Court must now consider wither Plaintiffs should be granted leave to file the Proposed Amended Complaint. Plaintiffs argue that leave is freely granted under Rule 15(a) of the Federal Rules of Civil Procedure, and that leave is proper here because the Proposed Amended Complaint cures the ripeness defect of Claim 5 by asserting that Plaintiffs have already abandoned the Bridge. Plaintiffs argue that Claim 5 is not contingent on the other claims and should instead be considered in the alternative.

Under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a party may set forth two or more statements of a claim alternately or hypothetically. Rule 8(e)(2), however, is limited by Rule 11 of the Federal Rules of Civil Procedure, which states that when presenting pleadings to the court, the party is certifying that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a

reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Plaintiffs may not, under Rule 11 limitations, assert contradictory statements of fact unless Plaintiffs are legitimately in doubt about the facts in question. *American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996). Therein lies the rub.

In this case, Plaintiffs cannot legitimately be in doubt about the facts relating to ownership or abandonment of the Bridge because abandonment *lies within Plaintiffs' own intentions*. *See Hodges v. Ettinger*, 189 N.E. 113, 114 (Ohio 1934) ("Abandonment is the intentional relinquishment of a known right."); *Hamilton v. Harville*, 577 N.E.2d 1125, 1127 (Ohio Ct. App. 1989) ("In order for an abandonment to exist, affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent must be shown. Therefore, occasional, infrequent or even complete non-use is not sufficient in itself to establish the existence of an "abandonment," absent other evidence tending to prove the intent to abandon."). One the one hand, Plaintiffs demand that the ramp be rebuilt so they may operate the Bridge, and on the other hand they ask, in the alternative, for the Court to declare that Plaintiffs have abandoned the Bridge. Plaintiffs cannot simultaneously assert ownership over the Bridge and also assert that they have abandoned the Bridge simply by labeling them as alternative theories of recovery.

Plaintiffs' situation is distinguishable from cases in which the facts truly may be in doubt, justifying pleading alternative facts. *See Molsbergen v. United States*, 757 F.2d 1016, 1018-19 (9th Cir. 1985); *Astroworks, Inc. V. Astroexhibit, Inc.*, 257 F.Supp.2d 609 (S.D.N.Y. 2003). For example, in *Molsbergen*, the plaintiff claimed that the defendants exposed her husband to dangerous chemicals, which caused his death. The plaintiff claimed that the defendants were either negligent in the exposure, or did so intentionally. Pleading in the alternative was

acceptable in the complaint because the plaintiff needed to continue though discovery in order to determine the actual state of mind of the defendants. Similarly, in *Astroworks*, the plaintiff was permitted to plead both breach of contract and unjust enrichment even though the state law did not allow recovery under both theories. The court explained that while the plaintiff could not allege both that there was an agreement and that there was not an agreement, the plaintiff could allege inconsistent theories of recovery such that if the agreement amounted to a contract, the remedy would be breach and if the agreement did not rise to the level of a contract, the remedy would be for unjust enrichment. *Astroworks*, 257 F.Supp.2d at 616.

In the present case, discovery will likely not add anything to Plaintiffs' theory of recovery because abandonment rests solely on Plaintiffs' actual intentions with respect to the Bridge. Plaintiffs are permitted to plead inconsistent facts, pursuant to Rule 8(e), but only when facts are in doubt such that discovery will clarify confusion. Because abandonment rests on the intention of Plaintiffs themselves, Plaintiffs must know the underlying facts relatively well: either Plaintiffs intended to abandoned the Bridge or they did not.

There is a difference between a case involving certain facts where alternative relief may be afforded according to the applicable law, and a case where a set of facts is asserted which would lead to relief on one theory and at the same time another set of facts–inconsistent with the first set–is is alleged which would lead to relief on some other, inconsistent theory. With respect to the latter, the choice is not between alternative forms or theories of relief, but rather between two inconsistent cases altogether. Here, Plaintiffs assert ownership and claim that certain defendants are responsible for damages to Plaintiffs as owners, and at the same time Plaintiffs assert abandonment and claim that an entirely different group of defendants are responsible for

destruction costs and fines.[3] While Rule 8(e) was intended to provide flexibility in pleadings, particularly since the complaint is written in the pre-discovery stage, Rule 8 does not allow for this type of contradictory pleading.

Because Plaintiffs' Proposed Amended Complaint does not cure the ripeness problem addressed by the Court in dismissing Claim 5 of the Original Complaint, leave to amend would be futile, and therefore must be denied.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration is **DENIED**, and Plaintiffs' Motion for Leave to File Instanter First Amendment Complaint is **DENIED**.

**IT IS SO ORDERED.**

                                                        s/Algenon L. Marbley
                                                        **ALGENON L. MARBLEY**
                                                        **UNITED STATES DISTRICT JUDGE**

**DATED: November 28, 2006**

---

[3] The Court offers no opinion at this time as to what, if any effect, the abandonment of property has on the obligations and liabilities of the abandoners.