IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **OHIO MIDLAND, INC.,** *et al.* : | |
| : | |
| Plaintiffs, : | Case No. C2-05-1097 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| **GORDON PROCTOR,** Director of : | Magistrate Judge Abel |
| Ohio Department of Transportation, *et al.*, : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on a combined motion to dismiss filed by Defendants Ohio Department of Transportation ("ODOT"), Gordon Proctor, Director of ODOT ("Proctor"), and Jim Spain, District Deputy Director of ODOT, District 11 ("Spain"), (collectively, "ODOT Defendants"). For the reasons set forth herein, the Court **GRANTS** Defendants' Combined Motion to Dismiss.

**II. BACKGROUND**

**A. Facts**

Because the matter before the Court is Defendants' Motion to Dismiss, the Court will consider the facts in the light most favorable to Plaintiffs. *McGee v. Simon & Schuster, Inc.*, 154 F. Supp. 2d 1308, 1310 (S.D. Ohio 2001).

On September 12, 1922, the United States Congress enacted House Bill 11901, which authorized the construction, operation, and maintenance of a bridge across the Ohio River in order to connect the City of Benwood, West Virginia and the City of Bellaire, Ohio. The Bill

incorporated by reference 33 U.S.C. § 491 in which Congress expressly reserved to itself the right to alter, amend, or repeal its authorization:

> When, after March 23, 1906, authority is granted by Congress to any persons to construct and maintain a bridge across or over any of the navigable waters of the United States, . . . and when the plans for any bridge to be constructed under [this] title, have been approved by the Secretary it shall not be lawful to deviate from such plans, either before or after completion of the structure, unless the modification of such plans has previously been submitted to and received the approval of the Secretary.

33 U.S.C. § 491.

The bridge was opened to traffic in 1926 and is commonly referred to as the "Bellaire Bridge" (hereinafter, the "Bridge").

The Interstate Bridge Company ("IBC") constructed, operated, and maintained the Bridge as a toll bridge until 1991 when ODOT, having the right of appropriation, purchased the existing bridge ramp on the Ohio side of the river from IBC and demolished the ramp for the construction of Ohio Route 7.

IBC and ODOT Defendants allegedly entered into two agreements regarding the Bridge. First, on December 5, 1990, ODOT and IBC entered the first agreement (hereinafter, "Agreement #1"), a contract for the sale of the real property constituting the area of the existing ramp on the Ohio side of the river. Agreement #1 made no provision for any damages caused to the remainder of the Bridge owned by IBC. Second, on January 7, 1991, ODOT and IBC executed the second agreement (hereinafter, "Agreement #2"), in which both parties agreed that the payment was for the real estate as well as damages to the remainder of the Bridge. Agreement #2 provided for the exact same amount of compensation as Agreement #1, which had included compensation for the real estate only.

On March 22, 1991, Plaintiff Roger Barack ("Barack") purchased the remaining portion of the Bridge from IBC intending to operate the Bridge as a toll bridge. Subsequent to this sale, IBC became defunct. When Barack purchased the Bridge, he purportedly believed that ODOT planned to reconnect the Ohio side of the Bridge to the main part of the Bridge so that the Bridge could reopen to traffic. ODOT later decided, however, that it would neither reconnect the Bridge in Ohio, nor allow Barack to build a ramp to the Bridge. Thereafter, Barack assigned any and all interest he had in the remaining Bridge assets to co-plaintiff, Ohio Midland, Inc. ("Ohio Midland").

The U.S. Coast Guard (the "Coast Guard") adjudged the Bridge to be an "unreasonable obstruction to navigation," and, accordingly, it issued orders for Plaintiff Barack to remove the Bridge. Further, on October 18, 2005 the Coast Guard issued orders for the payment of $300,000, plus interest and administrative costs, as civil penalties for Barack's alleged failure to comply with its order of removal.[1][2]

### B. Procedural History

On December 5, 2006, Barack and Ohio Midland (collectively, "Plaintiffs") filed their initial complaint (the "Complaint"), consisting of eight claims, against the following defendants: (1) ODOT Defendants; (2) Admiral Thomas H. Collins, Commandant of the Coast Guard; (3) Joe Manchin III, Governor of West Virginia; (4) Norfolk Southern Railway Co., care of CT

---

[1] Barack appealed the Coast Guard's administrative order, and that case, which is currently pending in Federal Court, has been consolidated with the instant case. *See Roger Barack v. U.S. Coast Guard Commandant*, Case No. C2-05-1044.

[2] Notably, in the October 18, 2005 administrative order, the Deputy Chief affirmed the Hearing Officer's civil penalty decision regarding Barack's noncompliance with the Coast Guard's *November 14, 2001* order to demolish the Bridge.

Corp. System, its statutory agent; and (5) the City of Benwood Mayor's Office, care of Mayor Edward M. Kuca, Jr.

Plaintiffs assert Claims 1, 2, 3, 4, and 7 of the Complaint against ODOT Defendants. Plaintiffs claim that ODOT Defendants: (1) prevented Plaintiffs from using the Bridge by not replacing the Ohio-side ramp, thereby constituting a taking of property without compensation (Claim1); (2) failed to account to Plaintiffs for the fair market value of salvage materials from the area of the ramp acquired by ODOT (Claim 2); (3) violated the Congressional Act of House Bill 11901 and 33 U.S.C. § 491 by impeding travel over the Bridge without federal permission (Claim 3); and (4) violated the Congressional Act of House Bill 11901 and 33 U.S.C. § 491 by effectively closing the Bridge without federal permission (Claim 4). In addition, Plaintiffs assert that, because ODOT Defendants violated the Congressional Act of House Bill 11901, they should be ordered to pay the removal costs and penalties levied on Plaintiffs by the Coast Guard (Claim 7).

Plaintiffs request various forms of relief in their Complaint with respect to these claims. First, Plaintiffs ask the Court to: (a) order ODOT Defendants to construct a ramp over Ohio State Route 7 to permit the use of the Bridge for vehicular traffic and (b) enjoin ODOT Defendants from impeding Plaintiffs' use of the Bridge as a toll bridge. Second, Plaintiffs request that should the Court order ODOT Defendants to construct a ramp, it should also awarded Plaintiffs damages for loss of toll profits from the date the ramp was removed by ODOT to the date ODOT completes the new ramp and reopens the Bridge to vehicular traffic. Third, Plaintiffs contend that should the Court choose *not* to order ODOT Defendants to construct a new ramp, the Court should alternatively order ODOT Defendants to file appropriation proceedings to determine the

amount of damages due to Plaintiffs for the remainder of the Bridge in Plaintiffs' possession at the time ODOT Defendants allegedly "took" the economic use of the remainder of the Bridge when it acquired the Ohio-side ramp.  Fourth, Plaintiffs request money damages for the salvage materials of the ramp and for their claim that ODOT Defendants violated their civil rights by impeding traffic over the Bridge without federal approval.

ODOT Defendants collectively filed this Motion to Dismiss pursuant to 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on April 6, 2006.  On June 29, 2006 Plaintiffs filed a Response to Defendants' Motion to Dismiss in which Plaintiffs voluntarily dismissed ODOT as a defendant and clarified Plaintiffs' ambiguous Complaint by confirming that Plaintiffs bring all claims under § 1983.[3] [4]  Defendants replied on August 11, 2006. Accordingly, Defendants' Motion is now ripe for this Court's review.

### III. STANDARD OF REVIEW

When a defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first, because the Rule 12(b)(6) motion will become moot if the Court lacks subject matter jurisdiction.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

---

[3] On that same day, Plaintiffs also filed a Motion for Leave to Amend their Complaint and referred to their Proposed Complaint throughout their Response to Defendants' Motion to Dismiss.  This Court, however, denied Plaintiffs' Motion for Leave to Amend on November 28, 2006, thereby rejecting the Proposed Complaint.  Therefore, the Court will refer to Plaintiffs' original complaint in its analysis of Defendants' Motion to Dismiss.

[4] Section 1983 encompasses the "deprivation of any rights, privilege, or immunities secured by the Constitution." *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), superseded on other grounds, 872 F.2d 772 (6th Cir. 1989) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)).

### A. Subject Matter Jurisdiction

Defendants contend that dismissal is warranted under FED. R. CIV. P. 12(b)(1), which enables a defendant to raise by motion the defense of "lack of jurisdiction over the subject matter." When a defendant argues that the plaintiff has not alleged sufficient facts in the complaint to establish subject matter jurisdiction, the court takes the allegations in the complaint as true. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). The plaintiff bears the burden of proving jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). In considering such a motion, however, the court has wide discretion to consider evidence outside the pleadings to resolve disputed jurisdictional facts. *Nichols*, 318 F.3d at 677.

### B. Failure to State a Claim

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of the complaint. *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975). When considering such motion, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all "factual allegations and permissible inferences therein." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Legal conclusions framed as factual allegations, however, are accorded no such presumption. *Lewis v. ACB Bus. Serv., Inc.* 135 F.3d 389, 405 (6th Cir. 1998). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court's focus is on whether the plaintiff is entitled to offer evidence to support the claims, and not on whether the plaintiff will ultimately prevail. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Indeed it may

appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id*.

A plaintiff need not include all of the particularities of the claims against the defendant in order to survive a 12(b)(6) motion. *Brooks v. Am. Broad. Co., Inc.*, 932 F.2d 495, 497 (6th Cir. 1991). Pursuant to the Federal Rules of Civil Procedure, the complaint need only set forth the basis of the court's jurisdiction, a short and plain statement of the claim entitling the plaintiff to relief, and a demand for judgment. *See* FED. RULE CIV. PRO. 8(a). A court will grant a motion for dismissal under 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health and Recovery Bd.*, 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. ANALYSIS

Defendants urge this Court to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim. Defendants claim this Court lacks subject matter jurisdiction over Proctor and Spain because they are protected by Eleventh Amendment immunity, and are, therefore, not liable under § 1983. Additionally, Defendants maintain that Plaintiffs have failed to state a claim against Proctor and Spain because: (1) Plaintiffs' claims are barred by the statute of limitations; (2) Plaintiffs do not allege any personal involvement of Proctor or Spain; and (3) Plaintiffs have an adequate remedy under state law thus barring their suit in federal court.

Because Defendants are shielded from monetary liability by the Eleventh Amendment, and all of Plaintiffs' claims are barred by the statute of limitations, Plaintiffs' claims are hereby

dismissed.

### A.  Subject Matter Jurisdiction

Defendants argue they are immune from suit in this Court under the Eleventh Amendment to the United States Constitution which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

The Eleventh Amendment has been extended judicially to prevent a federal court from hearing a suit brought by a citizen against his own state, or agencies of the state, unless the state has waived its sovereign immunity.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  In this case, Plaintiffs concede that ODOT, an entity and agent of the State of Ohio, is protected by Eleventh Amendment sovereign immunity and, therefore, have voluntarily dismissed ODOT as a Defendant.  *See* Pls.' Response in Opposition.

The Eleventh Amendment also shields state officials who are sued in their official capacities for monetary damages.  *Kentucky v. Graham*, 473 U.S. 159 (1985).  Sovereign immunity does not, however, preclude suits against state officers for: (1) prospective injunctive relief, or (2) monetary damages to be paid out of the state officers' own pockets (*i.e.*, suing officers in their "individual capacities").  *See Ex Parte Young*, 209 U.S. 123 (1908); *Kentucky v. Graham*, 473 U.S. 159 (1985); *Foulks v. Ohio Dept. of Rehab. and Corr.*, 713 F.2d 1229 (6th Cir. 1983).  In other words, if a state agency is acting in violation of federal law, suit to enjoin prospectively the impermissible behavior may be brought in federal court by naming the state officer as the defendant and seeking prospective injunctive relief.  Federal courts may not,

however, award retrospective relief, such as money damages or its equivalent, if the State invokes its immunity. *Edelman v. Jordan*, 415 U.S. 651 (1974). Yet state officers can be sued in their *individual* capacities for monetary damages paid from the officers' own funds.[5] *Kentucky v. Graham*, 473 U.S. 159 (1985).

In this case, Plaintiffs seek both injunctive and monetary relief from Proctor and Spain. To overcome sovereign immunity claims, therefore, Plaintiffs must show that the relief sought is: (1) prospective injunctive relief and (2) monetary funds to be paid by Proctor and Spain in their individual capacities.

### Injunctive Relief

There is no Eleventh Amendment bar to federal court jurisdiction where the suit against state officers is for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). State officers have no authority to violate the constitution and therefore, any illegal act–such as taking without just compensation–is deprived of state authority and the state has no power to bestow any immunity from responsibly to the Constitution, the supreme law of the United States. *Ex parte Young*, 209 U.S. at 160. As such, a plaintiff may enforce a claim of federal right by obtaining injunctive relief against a state officer, even in the officer's official capacity. In *Edelman v. Jordan*, 415 U.S. 651 (1974), the Supreme Court explained that the purpose of this exception to the Eleventh Amendment shield is to prevent continuing violations of federal law, but not to remedy past violations. Therefore, an *Ex parte Young* plaintiff may obtain prospective

---

[5] Of course state agents may still rely on personal defenses such as qualified immunity, which shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).


injunctive relief–that is, an order compelling state compliance in the future–but not retrospective relief. *See Edelman,* 415 U.S. at 664-65. In addition, the Eleventh Amendment does not prohibit a federal court from granting injunctive relief against a state officer even though compliance with the injunction will, in effect, cost the state a sizeable amount of money in the future. *See, e.g., Quern v. Jordan*, 440 U.S. 332 (1979); *Milliken v. Bradley*, 433 U.S. 267 (1977); *Edelman v. Jordan*, 415 U.S. 651 (1974).

In this case, Plaintiffs claim that they seek prospective injunctive relief by requesting this Court to order Proctor and Spain to: (1) construct a ramp to permit use of the Bridge for vehicular traffic; (2) refrain from impeding Plaintiffs' use of the Bridge as a toll bridge; and (3) retrieve the salvage materials ODOT disposed of and transfer them to Plaintiffs. Through this prospective injunctive relief, Plaintiffs seek to remedy the alleged unconstitutional taking of their property interest in the residue of the Bridge and the salvage materials.

At first glace, the injunctive relief sought by Plaintiffs appears to be, in reality, monetary damages to be paid from the state treasury, which is barred by the Eleventh Amendment, since an injunction requiring Proctor and Spain to retrieve salvage materials and rebuild the ramp would require substantial expenditures from the state. Because the law is clear that courts can order state agents to provide injunctive relief regardless of the cost to the state, the fact that ODOT would have to spend state funds in building a ramp to the Bridge does not prevent this Court from ordering that specific relief. *Quern v. Jordan*, 440 U.S. 332 (1979). Therefore, Plaintiffs' claims regarding Defendants' alleged taking of the Bridge and violation of federal law by impeding traffic and effectively closing the Bridge (Claim 1, 3, 4, 7) will not be dismissed for lack of subject matter jurisdiction, because the related relief requested is prospective injunctive

relief.

Plaintiffs' request that the Court order Proctor and Spain to retrieve salvage materials or account to Plaintiffs for the damages, however, is in a different category.  ODOT sold the salvage materials as early as 1991, so it is nearly impossible for Defendants to recover the materials, as they may have been resold or incorporated in another bridge structure.  In the alternative, Plaintiffs ask that the Court order Defendants to file appropriation proceedings to determine the amount of damages due to Plaintiffs for their interest in the salvage materials.   In effect, Plaintiffs are asking the Court either to order Defendants to do the impossible, or pay for it.  This is not prospective injunctive relief, and the relief requested in Claim 2 will, therefore, be considered monetary damages and analyzed below.

## Monetary Relief

In the alternative to the injunctive relief requested, Plaintiffs seek an award of compensatory and punitive damages against Proctor and Spain for: (1) taking the Bridge and salvage materials without compensation; (2) effectively impeding travel and closing the Bridge in violation of federal law; and (3) the costs of removing the residue of the Bridge and paying civil penalties as ordered by the Coast Guard.[6]  Plaintiffs contend that they seek this relief from Proctor and Spain in their personal capacities.[7]  Because the Eleventh Amendment bars monetary

---

[6] In their complaint, Plaintiffs ask for monetary relief *in addition* to injunctive relief, such that even if Defendants are ordered to build a ramp, Plaintiffs should be awarded damages for lost toll profits from the time of the ramp destruction to the time the Bridge reopens to traffic.  In their Response, however Plaintiffs assert that damages are requested *in the alternative* to injunctive relief.

[7] Plaintiffs admit that their original Complaint did not make explicit allegations of personal liability, so that one might reasonably interpret the Complaint as seeking to impose official liability enforceable against State funds.  They seek to clarify their intent in the Proposed

damage suits against state officers sued in their official capacities, whether Plaintiffs' claims can withstand dismissal depends on whether they are suing Proctor and Spain in their individual or official capacities.

The Supreme Court, noting that the distinction between individual and official capacity suits "apparently continues to confuse lawyers and confound lower courts," has attempted to articulate the doctrinal differences between the actions:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. at 165 (internal quotes and citations removed).

Because the pleadings in this case are ambiguous, this Court must look to the manner in which the parties have treated the suit to determine whether Plaintiffs are suing Defendants in their official or individual capacities. *See, e.g., Shockley v. James*, 823 F.2d 1068 (7th Cir. 1987) (noting the ambiguous nature of plaintiff's pleadings and finding that because plaintiffs sought personal liability, and defendants invoked defenses only available to individuals, the court would treat the action as one against defendants in their individual capacities); *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) (holding that, where the complaint was unclear, plaintiff's request for punitive damages, along with defendants' summary judgment motion on absolute

---

Amended Complaint, which has been denied. This Court will, however, consider Plaintiffs' claims in light of their intent set forth in their Response in Opposition.

immunity grounds suggested that the parties believed that the action was a personal capacity suit); *Shabazz v. Coughlin*, 852 F.2d 697 (7th Cir. 1988) ("[Plaintiff's] request for punitive and compensatory damages, coupled with the defendants' summary judgement motion on qualified immunity but not Eleventh Amendment grounds, suggests that the parties believed that this action is a personal capacity suit.").

The Court observes that while Plaintiffs state their intention to sue Defendants in their personal capacities in their Response to Defendants' Motion, upon careful review of the pleadings, it is clear, as a matter of law, that Proctor and Spain were not acing in their personal capacities and that, therefore, any funds to be paid would come from the state treasury. It appears that the parties themselves treated this case as an official capacity suit, despite Plaintiffs' characterization, and in the interests of justice, substance regularly trumps form.

First, Plaintiffs named Proctor and Spain in their Complaint only by way of Proctor's and Spain's positions at ODOT: "Defendant Ohio Department of Transportation has as its Director Gordon Proctor with officers in Columbus, Ohio. Defendant Ohio Department of Transportation-District 11 has as its Deputy Director Jim Spain with principal offices in New Philadelphia, Ohio." The Complaint proceeds with references to ODOT or "Defendants ODOT" throughout the allegations, but there are absolutely no allegations of any conduct by either Proctor or Spain. Second, neither Defendants' Motion nor their Reply raise any personal capacity defense (such as qualified immunity), but only official capacity defenses (such as sovereign immunity). Third, Defendants maintain that Proctor and Spain were not even in their

current positions with ODOT at the time of the actions giving rise to Plaintiffs' compliant.[8] Plaintiffs assert that even if Defendants were not the initial decision-makers with respect to the Bridge, once they became directors, they "continued the decision" not to rebuild the ramp or pay Plaintiffs and should, therefore, be subject to a personal capacity suit.  This Court disagrees.

And individual defendant in a § 1983 action can be held liable only upon a showing that he was personally responsible for, or personally involved in, the deprivation of rights which form the basis of the suit.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).  In other words, respondeat superior cannot form the basis for liability under 42 U.S.C. § 1983.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984).

In this case, Proctor and Spain were not in their respective positions at the time of the alleged taking.  Plaintiffs do not allege any personal participation on the part of Defendants other than their "continued decision" to not rebuild the ramp.  Such "action" does not rise to the level of personal involvement necessary to demonstrate, as a matter of law, that Plaintiffs intended to sue Proctor and Spain in their individual capacities.

Because Plaintiffs do not allege personal involvement of Proctor and Spain, and the parties themselves treated Plaintiffs' complaint as an individual capacity suit, notwithstanding Plaintiffs' characterization, this Court concludes that this action is not one against Proctor and Spain in their individual capacities, but against Defendants in their official capacities as directors

---

[8] Plaintiffs assert that the Court should not consider this information brought forth by Defendants in its analysis of Defendants' Motion to Dismiss because the information is not within the pleadings themselves.  In deciding whether or not this Court has subject matter jurisdiction, however, the Court has wide discretion to consider affidavits and documents outside the pleadings.  *Absolute Mach. Tools, Inc. V. Clancy Mach. Tools, Inc.*, 410 F. Supp. 2d 665, 668 (N.D. Ohio 2005).

of ODOT.  As discussed above, official capacity suits are barred by the Eleventh Amendment unless Plaintiffs seek prospective relief.  Therefore, Claims 2, 3, 4, and 7 are hereby dismissed to the extent they seek monetary relief.  The Eleventh Amendment is not an obstacle to relief for Claims 1, 3, 4, and 7, to the extent they seek prospective injunctive relief.

### B.  Failure to State a Claim

Defendants also argue that Plaintiffs' Complaint should be dismissed for failure to state a claim because, among other things, Plaintiffs' claims are time-barred by the applicable statue of limitations.

Actions brought pursuant to § 1983 incorporate the statute of limitations from a state's general personal injury statute.  *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1998)).  In Ohio, the applicable statute of limitations is set forth in Ohio Rev. Code 2305.10, which provides that the plaintiff must bring an action within two years after the cause of action accrues.  *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1998) (en banc).  The two-year statute of limitations applies to all § 1983 actions, including those involving taking without just compensation under the Fifth Amendment.  *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).

Plaintiffs concede that their claims, all of which arise under § 1983, are governed by Ohio's two-year statute of limitations.  The issue before the Court is, rather, when the statue of limitations began to accrue.  While the applicable statute of limitations is dictated by state law, the question of when the statute begins to run is governed by federal law.  *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985)).  Under federal law, "the statute begins to run when plaintiffs knew or should have known of the injury

which forms the basis of their claims." *Id.* (Citations omitted). "In determining when the cause of action accrues in section 1983 actions, [courts] have looked to what event should have alerted the typical lay persons to protect his or her rights." *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

In this case, the events leading to the alleged taking of the Bridge and violation of House Bill 11901 occurred in 1990 and 1991. Plaintiffs contend that the "injury or loss" effectively occurred on October 18, 2005 when the Coast Guard ordered Plaintiff Barack to demolish the Bridge.[9] Plaintiffs assert that the taking of the residue of the Bridge was not "consummated" until it was ordered removed on October 18, 2005, because at any time until that date, Proctor and Spain could have constructed a new ramp to permit continued use of the Bridge. Plaintiffs rely on *United States v. Dickinson*, 331 U.S. 745 (1947), where the court held that the plaintiff, the owner of land that had been flooded by the government, did not realize the extent of the flooding damage until the government's actions had "so manifested themselves that a final account [could] be struck." The court held that the governmental taking in that case was not a single event, but a continuing process of events, and the plaintiff's taking claim did not accrue until the flooding had become stabilized.

Plaintiffs' situation does not align with *Dickerson*. Plaintiff Barack purchased the remaining portion of the Bridge *after* ODOT acquired the Ohio-side ramp.[10] While Barack

---

[9] As noted earlier, the October 18, 2005 order actually affirmed the Hearing Officer's decision to fine Barack for not complying with the Coast Guard's November 14, 2001 order to demolish the Bridge.

[10] The Court notes that Plaintiffs may not even have a takings claim, because when they purchased the Bridge, the ramp was not part of the sale; Plaintiffs merely had the mistaken belief that ODOT planned to rebuild the passage way. Because this argument was not raised by

-16-

intended to continue operation of the Bridge as a toll Bridge, ODOT abandoned its alleged plans to rebuild the Ohio-side ramp over the newly constructed highway and refused to allow Barack to build the ramp himself. Therefore, Plaintiffs knew of the possible non-use of the Bridge as early as the time Barack purchased it, or shortly thereafter when ODOT abandoned its alleged rebuilding plan. Plaintiffs argue that their claims are within the applicable statute of limitations because the alleged violations were not complete until October 18, 2005 when the Coast Guard ordered the Bridge to be removed. The Coast Guard, however, having determined that the Bridge represented an unreasonable obstruction to navigation, issued a notice to Plaintiff Barack in November of 1998 affording him 60 days to provide the Coast Guard with his plans to demolish the Bridge.[11] Additionally, the October 18, 2005 order affirmed findings made by the Coast Guard Hearing Officer on November 14, 2001 that Barack failed to comply with the Coast Guard's demolition orders. Even if Plaintiffs were hopeful that Defendants would alter their plans and decide to rebuild the ramp when Plaintiff first bought the Bridge, Plaintiffs had reason to know of their injury in 1998, and no later than 2001, which is well over two years before they flied their complaint in 2005.

Nevertheless, Plaintiffs argue that even if their claims arose more than two years prior to the filing of this action, the statute of limitations was tolled until October 18, 2005 because Defendants "continued decision" to not rebuild the Bridge was a "continuing violation" of

---

Defendants, however, the Court will continue to analyze the takings claim as asserted by Plaintiffs.

[11] *See* Pls' Complaint, Exhibit A, in *Roger Barack v. U.S. Coast Guard Commandant*, Case No. C2-05-1044, which has been consolidated with the present action; Pls' Motion for Leave to Amend and Proposed Amended Complaint P. 16;

federal law and Plaintiffs' rights.  Plaintiffs claim that the statute of limitations period was tolled until Defendants either decided to rebuild the Bridge in accordance with Plaintiffs' rights, or no longer had the ability to do so, which Plaintiffs assert happened on October 18, 2005 instead of any of the early dates on which Plaintiffs received demolition orders from the Coast Guard.

As threshold matter, the Court notes that "[c]ourts have been extremely reluctant to apply [the "continuing violation"] doctrine outside of the context of Title VII." *Bygrave v. Van Reken*, 238 F.3d 419, 2000 WL 1769587 *2 n.2 (6th Cir. 2000) (quoting *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995)).  The doctrine has been applied to two limited circumstances within Title VII.  The first "arises when there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation." *LRL Properties*, 55 F.3d at 1105 (quoting *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991)).  For example, each time an employer discriminates among employees by underpaying certain workers, the statute of limitations begins again, as every act is an illegal one.  The second arises where there has been "a longstanding and demonstrable policy of discrimination." *Id*. at 1106.

No matter how favorably construed, the facts pled by Plaintiffs cannot establish a continuing violation.  Defendants' alleged "continued decision" not to rebuild the ramp does not fall within either of the forgoing categories, as it was merely a manifestation of the alleged prior taking.  There were no new and independent acts committed by Proctor or Spain.  The Plaintiffs complain of a discrete act that occurred at a discoverable and discernable time.

Plaintiffs simply cannot pick one date from several on which they claim was the "consummation" of the Defendants' alleged taking.  In reality, the supposed taking could have occurred as early as 1998 when the Coast Guard notified Barack that it determined the Bridge to

be an unreasonable obstruction to navigation. Surely Defendants would not have then "changed their minds" and decided to rebuild the ramp, when they knew the Coast Guard was ordering it to be demolished. If there was a taking of property interests belonging to Plaintiffs, they had reason to know of such injury as early as 1998, and certainly no later than 2001 when the Hearing Officer penalized Barack for not complying with its orders to demolish the structure.

Because more than two years have elapsed between the time Plaintiffs' cause of action accrued and the time Plaintiffs filed this action, Claims 1, 3, 4, and 7 are barred by the statue of limitations, and are hereby dismissed. Analysis of Defendants' remaining arguments as to why Plaintiffs failed to state a claim is, therefore, no longer necessary.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, Plaintiffs claims against Proctor and Spain (Claims 1, 2, 3, 4, and 7) are dismissed, and Proctor and Spain are dismissed as Defendants in this matter.

**IT IS SO ORDERED.**


    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: December 28, 2006**