## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **OHIO MIDLAND, INC.,** *et al.* | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:05-cv-01097-ALM-MRA** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **GORDON PROCTOR, DIRECTOR,** | : | **Magistrate Judge Abel** |
| **OHIO DEPARTMENT OF** | : | |
| **TRANSPORTATION,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter comes before the Court on a Motion to Dismiss filed by Defendant Admiral Thomas H. Collins, Commandant, United States Coast Guard (the "Defendant"). For the reasons set forth herein, the Court **GRANTS** Defendant's Motion to Dismiss.

### II. BACKGROUND

#### A. Facts[1]

On September 12, 1922, Congress enacted House Bill 11901, which permitted the construction, maintenance, and operation a bridge over the Ohio River, connecting Bellaire, Ohio and Benwood, West Virginia (hereinafter the "Bridge"). The Bill incorporated by

---

[1] Because the matter before the Court is Defendant's Motion to Dismiss, the Court will consider the facts in the light most favorable to Plaintiffs. *McGee v. Simon & Schuster, Inc.*, 154 F. Supp. 2d 1308, 1310 (S.D. Ohio 2001).

reference 33 U.S.C. § 491 in which Congress expressly reserved to itself the right to alter, amend, or repeal its authorization:

> When, after March 23, 1906, authority is granted by Congress to any persons to construct and maintain a bridge across or over any of the navigable waters of the United States, . . . and when the plans for any bridge to be constructed under [this] title, have been approved by the Secretary it shall not be lawful to deviate from such plans, either before or after completion of the structure, unless the modification of such plans has previously been submitted to and received the approval of the Secretary.

33 U.S.C. § 491.

The Interstate Bridge Company ("IBC") constructed, operated, and maintained the bridge as a toll bridge until 1991, at which time the Ohio Department of Transportation ("ODOT"), having the right of appropriation, purchased the existing bridge ramp on the Ohio side of the river from IBC and demolished the ramp for the construction of Ohio State Route 7.  On March 22, 1991, Plaintiff Roger Barack ("Barack") purchased the remaining portions of the Bridge from IBC, and all assets and liabilities associated with the Bridge were assigned to him.[2]

When Barack purchased the Bridge, he purportedly believed that ODOT planned to reconnect the Ohio side of the Bridge to the main part of the Bridge, by building a new ramp over State Route 7, so that the Bridge could reopen to traffic.  ODOT later decided, however, that it would neither reconnect the Bridge in Ohio, nor allow Barack to build a ramp to the Bridge.  Thereafter, Barack assigned any and all interest he had in the remaining Bridge assets to co-plaintiff, Ohio Midland, Inc. ("Ohio Midland"), a corporation solely owed and controlled by Barack.

---

[2]     Under the Purchase Agreement between Barack and IBC, Barack received $700,000 for his assumption of liabilities associated with the Bridge.

In November 1998, years since the Bridge had been operable, the U.S. Coast Guard (the "Coast Guard"), upon an initial determination that the Bridge represented an unreasonable obstruction to navigation, issued a "60-Day" letter to Barack, which afforded Barack sixty days in which he must provide the Coast Guard with demolition plans for the Bridge.  Barack never provided such plans, and on November 14, 2001, the Coast Guard issued a formal Order requiring the removal of the Bridge.  After Barack made no effort to begin the removal process, the Coast Guard initiated a civil penalty action.  On October 18, 2005 the Coast Guard issued orders for the payment of $300,000, plus interest and administrative costs, as civil penalties for Barack's alleged failure to comply with the Coast Guard's November 14, 2001 order to demolish the Bridge.

On November 17, 2005, Barack appealed the Coast Guard's administrative order, and that case, which is currently pending in Federal Court, has been consolidated with the instant case. *See Roger Barack v. U.S. Coast Guard Commandant*, Case No. C2-05-1044 (hereinafter, "*Barack v. Guard*").  In that case, Barack argues, among other things, that: (1) the Coast Guard lacks jurisdiction to order the removal of the Bridge; and (2) the Coast Guard erred in determining legal ownership or operational responsibilities of the Bridge and failed to apply state law regarding Bridge ownership; and (3) the Coast Guard's orders are "erroneous, unconstitutional, arbitrary, capricious, unreasonable, an abuse of discretion beyond the powers of Congress and were rendered without substantial evidence and [Barack] was deprived due process of law."  Upon Motion of the Defendant Coast Guard Commandment in such case, this Court remanded the administrative decision so that the Coast Guard may conduct a detailed investigation to determine whether the Bridge is an unreasonable obstruction to navigation.

**B.  Procedural History**

On December 5, 2005, Plaintiffs Barack and Ohio Midland (collectively, "Plaintiffs") filed their initial complaint (the "Complaint") against Defendant Collins and several other defendants including the Ohio Department of Transportation ("ODOT").  In sum, Plaintiffs ask the Court to order ODOT officials to rebuild the ramp on the Ohio-side of the river, or pay for what Plaintiffs allege is an unconstitutional taking.  In the alternative, Plaintiffs ask the Court to declare that the Bridge has been abandoned and is, therefore, now owned by entities having ownership interest in the land upon which the Bridge and its piers sit.

Plaintiffs bring two of their eight claims against Defendant – Claim 6 and Claim 8. Plaintiffs assert Claim 6 in the alterative to the claims stated against ODOT officials.  Plaintiffs claim that the Bridge has been abandoned and that the remaining Bridge structure has reverted to the owners of the land; therefore, the Coast Guard should be enjoined from ordering Plaintiffs to remove the Bridge or to pay penalties for Plaintiffs' alleged failure to remove the remainder of the Bridge.  In Claim 8, Plaintiffs claim that the Coast Guard has no jurisdiction over the Bridge because the authorization for the Bridge's existence lies with Congress, and Congress reserved its authority over the Bridge in the 1922 House Bill.  Claim 8 also states that even if the Coast Guard has jurisdiction over the Bridge, the Court must interpret whether this jurisdiction extends beyond the high water mark, as the Coast Guard claims, to include ramps leading to the Bridge. Plaintiffs request that the Coast Guard be enjoined from ordering Plaintiffs to remove the Bridge and from assessing Plaintiffs a penalty, interest and administrative costs regarding any order of removal.

On May 11, 2006, Defendant filed the instant Motion to Dismiss pursuant to 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure. Defendant contends that because Plaintiffs

failed to identify any waiver of sovereign immunity, this Court is not permitted to take subject

matter jurisdiction over the action. Defendant also asserts that Plaintiffs bring duplicate claims

against Defendant because Plaintiffs assert the same claims against Defendant in *Barack v.

Guard*, the appeal of the Coast Guard's administrative order, and, therefore, no relief can be

granted with respect to this action. On June 29, 2006, Plaintiffs filed a Response to Defendant's

Motion to Dismiss, which asserts that both claims are asserted against Defendant in his personal

capacity.[3] Defendants replied on July 6, 2006. Accordingly, Defendants' Motion is now ripe for

this Court's review.

### III. STANDARD OF REVIEW

When a defendant seeks dismissal under both Rules 12(b)(1) and 12(b)(6), the Court

must consider the Rule 12(b)(1) motion first, because the Rule 12(b)(6) motion will become

moot if the Court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit

Auth.*, 895F.2d 266, 269 (6th Cir. 1990).

### A. Subject Matter Jurisdiction

Defendant contends that dismissal is warranted under FED. R. CIV. P. 12(b)(1), which

enables a defendant to raise by motion the defense of "lack of jurisdiction over the subject

matter." When a defendant argues that the plaintiff has not alleged sufficient facts in the

---

[3]        On that same day, Plaintiffs also filed a Motion for Leave to Amend their
Complaint and referred to their Proposed Complaint throughout their Response to Defendants'
Motion to Dismiss. This Court, however, denied Plaintiffs' Motion for Leave to Amend on
November 28, 2006, thereby rejecting the Proposed Complaint. Therefore, the Court will refer
to Plaintiffs' original complaint in its analysis of Defendants' Motion to Dismiss.

complaint to establish subject matter jurisdiction, the court takes the allegations in the complaint as true. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). Conversely, when facts presented to the district court give rise to a factual controversy, no presumptive truthfulness applies, and the court must, therefore, weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. *Ohio National Life Insurance Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In considering such a motion, the court has wide discretion to consider evidence outside the pleadings to resolve disputed jurisdictional facts. *Nichols*, 318 F.3d at 677. The plaintiff bears the burden of proving jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

### B. Failure to State a Claim

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of the complaint. *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975). When considering such motion, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all "factual allegations and permissible inferences therein." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Legal conclusions framed as factual allegations, however, are accorded no such presumption. *Lewis v. ACB Bus. Serv., Inc.* 135 F.3d 389, 405 (6th Cir. 1998). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The court's focus is on whether the plaintiff is entitled to offer evidence to support the claims, and not on whether the plaintiff will ultimately prevail. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Indeed it may

appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id*.

A plaintiff need not include all of the particularities of the claim against the defendant in order to survive a 12(b)(6) motion. *Brooks v. Am. Broad. Co., Inc.*, 932 F.2d 495, 497 (6th Cir. 1991). Pursuant to the Federal Rules of Civil Procedure, the complaint need only set forth the basis of the court's jurisdiction, a short and plain statement of the claim entitling the plaintiff to relief, and a demand for judgment. *See* FED. RULE CIV. PRO. 8(a). A court will grant a motion for dismissal under 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complain there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Serv. v. Mental Health and Recovery Bd.*, 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. ANALYSIS

Defendant urges this Court to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendant claims this Court lacks subject matter jurisdiction to review any Coast Guard action outside the parameters of reviewing the administrative order already challenged in *Barack v. Guard*. Additionally, Defendant maintains that Plaintiffs' claims against Defendant in the instant matter simply duplicate substantive claims set forth in *Barack v. Guard*, and should be dismissed for failure to state a claim upon which relief can be granted.

### A. Subject Matter Jurisdiction

Defendant argues that this Court lacks subject matter jurisdiction over Plaintiffs' claims – aside from reviewing Barack's challenge to the final agency action in the October 18, 2005

-7-

administrative decision – because Defendant is protected by sovereign immunity.  Plaintiffs

asserts that their claims are not barred by sovereign immunity because: (1) Plaintiffs' claims are

not asserted against the United States, but instead are asserted against Defendant in his personal

capacity for acting outside the scope of his lawful authority; and (2) Plaintiffs' claims seek

review of final agency action, and therefore Congress has waived any sovereign immunity

Defendant may enjoy with respect to those claims.

### i. **Sovereign Immunity**

The United States, its agencies, and its officials acting in their official capacity can be

sued only to the extent that Congress consents by waiving sovereign immunity, and Congress's

consent defines a court's jurisdiction to hear the suit.  *See Dep't of the Army v. Blue Fox, Inc.*,

525 U.S. 255, 260 (1999); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Hawaii v.

Gordon*, 373 U.S 57, 58 (1963).  When jurisdictional facts are challenged, the party claiming

jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject

matter. *Ohio National Life Insurance,* 922 F.2d at 324.  Accordingly, in order to proceed against

the United States or one of its agents, the plaintiff must identify a waiver of sovereign immunity

in his complaint; otherwise, the claim must be dismissed for lack of subject matter jurisdiction.

*Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000).

In this case, Plaintiffs allege that this is not a suit against the United States, its agencies,

or officials acting in their official capacity, but one against Defendant in his personal capacity for

"acting outside the scope of his lawful authority," and that, in any event, sovereign immunity has

been waived by Congress.  Defendant alleges that sovereign immunity has not been waived, and

that at all times, he acted in his official capacity, pursuant to statutory authority under 33 U.S.C

§ 502, to order removal of unreasonably obstructive bridges over navigable waterways and to assess penalties for noncompliance.  This is a factual dispute; therefore, no presumptive truthfulness applies to Plaintiffs' jurisdictional factual allegations in the Complaint.  *Ohio National Life Insurance,* 922 F.2d at 325.

Regardless of the manner by which a plaintiff designates an action,[4] a suit is regarded as an official capacity suit (i.e., a suit against the sovereign) if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be to "restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963).  In other words, to determine whether a suit is brought against an official in his personal or official capacity, the court must ask whether, by obtaining relief against the official, the plaintiff will in effect obtain relief against the sovereign. *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949).  If relief is, in effect, obtained against the sovereign, the suit is barred because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction.  *Id.*

If an officer acts as an individual and not as an official, however, a suit directed against the official in his personal capacity is not a suit against the sovereign.  *Larson*, 337 U.S. at 689. For example, where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions because he is not conducting the

_____

[4]        Plaintiffs do not state that they are suing Defendant in is personal capacity in their Complaint, but do so in their proposed amended complaint, which was denied by the court.  The Court is aware, however, of Plaintiffs' characterization of the suit, however, through Plaintiffs Response filed in Opposition to the instant Motion to Dismiss.

business that the sovereign empowered him to do, or he is doing so in a way which the sovereign has forbidden. *Id.*

It is a prerequisite to the maintenance of any action against an agency of the sovereign, as in any other suit, for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened. *Larson*, 337 U.S. at 693. In addition, the action to be restrained or directed must not be an action of the sovereign. *Id.* If the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be regarded actions of a private principal under the normal rules of agency. *Id.* at 695. The actions of an officer of the sovereign can be regarded so "illegal" as to permit a suit for specific relief against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void. *Id.*

This Court observes that, while Plaintiffs state their intention to sue Defendant in his personal capacity in their Response to Defendant's Motion to Dismiss, upon careful review of the pleadings, it is clear, as a matter of law, that Defendant was not acting in his personal capacity, and that, therefore, any relief obtained through this suit would come from the sovereign itself. The parties themselves have treated this case as an official capacity suit, despite Plaintiffs' characterization, and in the interest of justice, substance regularly trumps form.

First, Plaintiffs named Defendant only by way of his position with the Coast Guard: "Defendant Admiral Thomas H. Collins Commandant U.S. Coast Guard." The Complaint proceeds with references to "Defendant U.S. Coast Guard" – an agency of the United States Government – but there are no allegations of any conduct by Defendant. For example, in Claim

6, Plaintiffs request that the Court enjoin "Defendant U.S. Coast Guard" from ordering Plaintiffs to remove the Bridge or to pay penalties for Barack's alleged failure to remove the remainder of the bridge structure.  Plaintiffs use similar language in Claim 8, which identifies the defendant as "Defendant U.S. Coast Guard," and not Admiral Collins in his personal capacity.  Second, neither Defendants' Motion nor their Reply raise any personal capacity defense (such as qualified immunity), but only official capacity defenses (such as sovereign immunity).  *See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) (holding that, where the complaint was unclear, plaintiff's request for punitive damages, along with defendants' summary judgment motion on absolute immunity grounds suggested that the parties believed that the action was a personal capacity suit).

Plaintiffs argue that Claim 6 is aimed at Defendant Collins in his personal capacity and he should be enjoined from ordering Plaintiffs to remove the Bridge or to pay civil penalties for their alleged failure to remove the Bridge, and from permitting any Coast Guard personnel to so order the Plaintiffs.  Plaintiffs contend that if the Bridge has been abandoned, and they are no longer th owners of the Bridge, then it is beyond the scope of Defendant's lawful authority to order, or permit any Coast Guard personnel to order, Plaintiffs to remove the Bridge or pay civil penalties for an alleged failure to remove the Bridge.

Essentially, Plaintiffs seek to restrain the Coast Guard and its personnel from ordering it to remove the Bridge as well as to restrain the Coast Guard from forcing Plaintiffs to pay civil penalties.  A judgment in favor of Plaintiffs would have the effect of restraining the U.S. Government from acting.  If the effect of the judgment in a suit would be "to restrain the Government from acting, or compel it to act," it is a suit against the sovereign.  *Dugan v. Rank*,

372 U.S. 609, 620 (1963). Plaintiff's action against Defendant is, therefore, in effect, a suit against the sovereign.

Additionally, under 33 U.S.C. § 502, the Commandant of the Coast Guard has authority to order removal of unreasonably obstructive bridges over navigable waterways and to assess civil penalties for noncompliance. *See* 33 U.S.C. § 502. If the actions of Defendant do not conflict with his statutory authority, he is acting on behalf of the U.S. Coast Guard, and therefore acting on behalf of the sovereign. Defendant ordered Plaintiffs to remove the Bridge and pay civil penalties pursuant to his authority to adjudicate matters of the Coast Guard and to issue and enforce Administrative Orders. Defendant was, therefore, not acting outside of the scope of his authority when he order Plaintiffs to remove the Bridge.

Defendant was acting in his official capacity in ordering Plaintiffs to remove the Bridge and in imposing fines. These actions were the actions of the sovereign. Plaintiffs' assertion that their suit is against Defendant in his personal capacity fails. As a result, this Court may only have jurisdiction over the claims in this case to review a final agency action pursuant to the Administrative Procedure Act.

Notwithstanding Plaintiffs' characterization, this Court concludes that this action is not one against Defendant in his personal capacity, but against Defendant in his official capacities as Commandant of the Coast Guard. Plaintiffs do not allege personal involvement of Defendant; the parties themselves treated Plaintiffs' Complaint as an official capacity suit; and Defendant acted pursuant to his statutory authority when ordering the removal of the Bridge. Such action is barred by sovereign immunity unless the government has consented to suit. As discussed

-12-

above, official capacity suits are barred by sovereign immunity unless the government has consented to suit.

### ii.  Final Agency Action

Plaintiffs state that the suit against Defendant seeks review of the October 18, 2005 administrative decision and that Congress has waived sovereign immunity for such actions in the Administrative Procedures Act, 5 U.S.C. §§ 500-706 ("APA").

Agency actions may be reviewed by federal courts if the courts have jurisdiction over them under the right to review created by Section 10 of the APA. *Air Brake Systems, Inc. v. Mineta*, 357 F.3d 632, 638 (6th Cir. 2004). The APA is a limited waiver of sovereign immunity for certain claims seeking non-monetary relief. *See* 5 U.S.C. § 702. The APA's waiver of sovereign immunity permits suit against the officer in his official capacity for acting "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or otherwise "unlawfully." See 5 U.S.C. § 706. Additionally, under the APA, federal courts may review two types of agency actions: (1) agency action made reviewable by statute and (2) final agency actions for which there is no other adequate remedy in a court. 5 U.S.C. § 704. To constitute "final agency action," the action must "mark the consummation of the agency's decision-making process…[and] must not be of a tentative or interlocutory nature;" in addition, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Air Brake Systems, Inc.*, 375 F.3d at 638 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

In this case, there is no specific statute creating the right to review the Coast Guard's actions. This Court can only have jurisdiction with respect to a "final agency action for which

there is no other adequate remedy in a court." 5 U.S.C. § 704. The only "final agency action" in this case is the Commandant's October 18, 2005 decision to impose civil penalties based upon Plaintiffs' failure to remove the Bridge. This decision is the only consummation of the agency's decision-making process that determined rights or obligations from which legal consequences flowed.

Plaintiffs specifically request this Court to review the October 18, 2005 decision of the Commandant. Plaintiffs request review of a final agency decision and assert claims seeking non-monetary relief . This Court has jurisdiction, therefore, pursuant to the APA, to review the Commandant's October 18, 2005 decision as a final agency action.

### B. Failure to State a Claim

Defendant also argues that Plaintiffs' Complaint should be dismissed for failure to state a claim because Plaintiffs bring duplicate claims, which have already been alleged in *Barack v. Guard*. Although no precise rule has evolved, as a general rule, duplicative litigation in federal courts should be avoided. *Colorado River Water Conversation Dist.v. United States*, 424 U.S. 800, 817 (1976). Inherent in every court is the power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). How this can best be done calls for the exercise of judgment, which must weigh competing interest and maintain an even balance. *Landis*, 299 U.S. 254-55; *Kansas City Southern Railway v. United States*, 282 U.S. 760, 763 (1931).

Faced with a duplicative suit, the federal court may exercise its discretion to stay or dismiss the suit before it, allow both federal cases to proceed, or enjoin the parties from proceeding in the other suit. *Twaddle v. Diem*, 2006 U.S. App. LEXIS 2430, *9 (6th Cir. 2006);

-14-

*Smith v. SEC*, 129 F.3d 356, 361 (1997).  "[S]imple dismissal of the second suit is [a] common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Twaddle*, 2006 U.S. App. LEXIS at *9 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000)); *see also Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953-54 (8th Cir. 2001) (joining other courts that have held a district court may dismiss one of two identical pending actions). It is an abuse of discretion, however, to prevent a party from proceeding in a suit that is not truly duplicative. *Smith*, 129 F.3d at 361.

In *Twaddle*, the Court held that although the two complaints were filed in the same court, arose out of the same facts, employed the same legal theories, and sought to recover for the same lost wages, the claims were not identical because the two complaints were brought against different defendants. *Twaddle*, 2006 U.S. App. LEXIS at *10.   In this case, by contrast, Plaintiffs concede that they filed two complaints in the same court, the complaints arise out of the same facts, employ the same legal theories, and seek to recover the same remedy against the same defendant, Admiral Collins.

Here, in both cases, Plaintiffs make the identical argument that the Coast Guard does not have jurisdiction to order removal of the Bridge. In both cases, Plaintiffs make the identical argument that the Coast Guard erred in determining legal ownership or operation responsibilities of the Bridge.  In both cases, Plaintiffs seek to enjoin the Coast Guard and seeks review of the Coast Guard's decision determining legal ownership of the Bridge.  The claims in both of these cases are identical and therefore duplicative.

-15-

It is within this Court's discretion and in the interest of judicial economy to dismiss the claims against Defendant as duplicative. Claims 6 and 8 against the Defendant are hereby dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.  Plaintiffs' claims against Admiral Collins (Claims 6 and 8) are dismissed, and Admiral Collins is dismissed as a Defendant in this matter.

**IT IS SO ORDERED.**


                     __s/Algenon L. Marbley_____
                     **ALGENON L. MARBLEY**
                     **United States District Court Judge**

**DATED: March 30, 2007**