IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OHIO MIDLAND, INC., *et al.* : | |
| : | |
| Plaintiffs, : | Case No. C2-05-1097 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| GORDON PROCTOR, Director of : | Magistrate Judge Abel |
| Ohio Department of Transportation, *et al.*, : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter comes before the Court on the following motions: (1) Defendant Norfolk Southern Railway Company's ("Norfolk") Motion for Summary Judgment on its counterclaims; and (2) Plaintiffs' Cross Motion for Summary Judgement on Norfolk's counterclaim for unjust enrichment.  For the reasons set forth herein, this Court **GRANTS in part and DENIES in part** Norfolk's Motion for Summary Judgment, and **GRANTS** Plaintiffs' Cross-Motion for Summary Judgment.

**II. BACKGROUND**

**A. Facts[1]**

On September 12, 1922, the United States Congress enacted House Bill 11901, which authorized the Interstate Bridge Company ("IBC") to construct, operate, and maintain a bridge

---

[1] The facts are taken, in large part, from the United States Coast Guard's administrative appellate decision issued on October 18, 2005, which Plaintiffs have appealed in a consolidated case before this Court.  *See Roger Barack v. U.S. Coast Guard Commandant*, Case No. C2-05-1044.

across the Ohio River to connect the City of Benwood, West Virginia and the City of Bellaire, Ohio.  IBC constructed such a bridge, commonly referred to as the "Bellaire Bridge" (hereinafter, the "Bridge") and operated it as a toll bridge until 1990 when the Ohio Department of Transportation ("ODOT"), having the right of appropriation, purchased the existing bridge ramp on the Ohio side of the river from IBC and demolished the ramp for the construction of Ohio Route 7.  This action left no physical access to traffic and rendered the Bridge fully inoperable, a state in which it has remained throughout this civil action.

On March 13, 1925, prior to building the Bridge, IBC entered into an agreement with the Pennsylvania Railroad Company ("PRC"), a predecessor to Norfolk, whereby PRC leased to IBC a 16' x 47' tract of land located directly under and immediately surrounding what is now the remaining pier of the Bridge located on Ohio soil (the "Lease Agreement").  Specifically, the Lease Agreement declared that in consideration for an annual payment, PRC "grants to [IBC] the right to construct, maintain, operate, use, renew and remove the [proposed] highway and traction bridge over an across the tracks and property"owned by PRS.  The Lease Agreement also specifies that PRC leases such land "throughout and during the period that [IBC] shall use and require the [leased property] for location of its [proposed] pier" and that rights and obligations under the agreement "shall be binding upon the parties hereto, their respective successors and assigns."

The Lease Agreement also addressed the duty to remove the Bridge from the property leased by PRC, now owned by Norfolk: "[IBC] shall at its own cost and expense construct, maintain, renew, and ultimately remove said bridge and pier and each and every part thereof,

upon, over and across the tracks and property owned or controlled by [PRC] . . . ." In addition, the Lease Agreement grants the lessor PRC the right to remove the Bridge:

> It is understood and agreed between the parties hereto that for the protection and safety of the property owned or in possession, custody or control of, as well as the protection and safety of the employees, patrons and licensees of [PRC], [PRC] may in its option at any time . . . do and perform any or all work whether of the original construction, maintenance, repair, removal or ultimate removal of said bridge, pier. . . in or upon or over the property of [PRC], and in such event may furnish and provide any materials and supplies necessary therefore, and [IBC] covenants and agrees that it will promptly pay or refund the entire cost therefore, plus fifteen percent for overhead to [PRC] upon rendition of proper bills therefore.

On March 22, 1991, Plaintiff Roger Barack ("Barack") and IBC entered into an Asset Purchase and Liability Assumption Agreement ("Purchase Agreement"), whereby IBC transferred, conveyed and assigned to Barack all, or substantially all, of its remaining properties, including the remaining portion of the Bridge. Pursuant to Section 2, Items (B)-(D) of the Purchase Agreement, entitled Assumption of Liabilities, Barack assumed:

> [a]ll liabilities or future obligations of [IBC] arising by reason of the ownership of the Bellaire Bridge, including any obligation on the part of [IBC] to demolish, raze and remove the remaining bridge structure . . . and [a]ll future obligations under any validly assigned leases . . . and [a]ll future obligations arising by reason of the ownership of said Bellaire Toll Bridge.

Under Section 4 of the Purchase Agreement, Barack received for his "assumption . . . of the liabilities of [IBC] . . . including any obligation to demolish, raze or remove the said Bellaire Bridge . . . the sum of Seven Hundred Thousand Dollars ($700,000.00) . . . ." Subsequent to the sale of the Bridge to Barack, IBC became defunct.

Norfolk asserts that Plaintiffs, through Barack's Purchase Agreement with IBC, assumed the liabilities set forth in the Lease Agreement originally entered into by IBC and PRC, and that

Plaintiffs are, therefore, liable to Norfolk, a successor entity of PRC, to comply with the Lease Agreement. Plaintiffs make no objection to this assertion.

When Barack purchased the Bridge in 1991, he purportedly believed that ODOT planned to reconnect the Ohio side of the Bridge to the main part of the Bridge so that the Bridge could reopen to traffic. Thereafter, in 1996, Barack assigned any and all interest he had in the remaining Bridge assets to co-plaintiff, Ohio Midland, Inc. ("Midland").[2] In 1997, Barack requested that the State of Ohio rebuild the ramp on Ohio Route 7 in order to allow the Bridge to resume operation as a toll bridge between Ohio and West Virginia. ODOT denied the request and indicated that it would neither reconnect the Bridge in Ohio, nor allow Barack to build a ramp to the Bridge.

In November 1998, because the Bridge had long been inoperable, the U.S. Coast Guard (the "Coast Guard"), upon an initial determination that the Bridge represented an unreasonable obstruction to navigation, issued a "60-Day" letter to Barack, which afforded Barack sixty days to provide the Coast Guard with demolition plans for the Bridge. While the Coast Guard allegedly continued to request demolition plans from Barack – in January of 1999, May of 1999, and June of 2001 – Barack did not respond to the Coast Guard until February 2002, in a correspondence that explained that Barack was "looking for demolition contractors" to satisfy the Coast Guard's request.

---

[2] Despite Barack's transfer to Midland, the Deputy Chief who issued the Coast Guard's administrative appellate decision on October 18, 2005, upheld the Hearing Officer's decision that Barack, and not Midland, has been at all relevant times the sole, actual owner of the Bridge.

Meanwhile, in April 2001, because Barack had neither provided demolition plans to the Coast Guard nor made any attempts to discuss the matter with the Coast Guard, the Coast Guard's Bridge Program Administrator requested that the Coast Guard Commandant approve an order to require the removal of the Bridge. The Commandant approved the request and, thereafter, on November 14, 2001, the Coast Guard issued an Order to Barack requiring the removal of the Bridge. On September 25, 2002, after Barack made no effort to begin the removal process, the Coast Guard initiated a civil penalty action. On October 18, 2005 the Coast Guard issued orders for the payment of $300,000, plus interest and administrative costs, as civil penalties for Barack's alleged failure to comply with the Coast Guard's November 14, 2001 order to demolish the Bridge. Barack appealed the Coast Guard's administrative order, and that case, which is currently pending in Federal Court, has been consolidated with the instant case. *See Roger Barack v. U.S. Coast Guard Commandant*, Case No. C2-05-1044 (hereinafter, *Barack v. Coast Guard*).[3]

### B. Procedural History

#### a. Complaint

On December 5, 2006, Barack and Ohio Midland (collectively, "Plaintiffs") filed their Complaint, consisting of eight claims, against the following defendants: (1) Directors of ODOT; (2) Admiral Thomas H. Collins, Commandant of the Coast Guard, ("Collins"); (3) Joe Manchin III, Governor of West Virginia, ("Manchin"); (4) the City of Benwood Mayor's Office, care of

---

[3] On March 6, 2007, upon Motion of the Defendant U.S. Coast Guard Commandment in *Barack v. Coast Guard*, this Court remanded the October 18, 2005 administrative decision so that the Coast Guard may conduct a detailed investigation to determine whether the Bridge is an unreasonable obstruction to navigation.

Mayor Edward M. Kuca, Jr.; and (5) Norfolk, care of CT Corp. System, its statutory agent. Plaintiffs only asserted one claim – Claim 5 – against Defendants Norfolk, Benwood, and Manchin. Claim 5 stated that, should the Court chose not to grant Plaintiffs' previously stated claims, (Claims 1-4), which demanded that ODOT rebuild the ramp or pay Plaintiffs for an "unconstituional taking," then the Court should alternatively find the Bridge "abandoned" by Plaintiffs, and conclude that, pursuant to Ohio and West Virginia laws, the remainder of the Bridge would revert to the owners of the land. Plaintiffs asserted Claim 5 against Defendants Manchin, Benwood, the Collins, and Norfolk on the basis that the State of West Virginia, the City of Benwood, the U.S. Coast Guard, and Norfolk may each have a propriety interest in the land upon which the Bridge is built and may, therefore, be responsible for its removal.

### B. Defendant Norfolk's Motion for Summary Judgment

On April 26, 2006, Norfolk filed a Motion for Leave to File an Amended Answer and Counterclaim, which the Court granted. In its counterclaims, Norfolk asserts the following: (1) Barack is contractually responsible, through the Lease Agreement originally entered into by IBC and PRC, and subsequently assigned to Barack through the IBC and Barack Purchase Agreement, for the removal of the Bridge; (2) Barack has breached the contract by failing to do so; and (3) Barack has been unjustly enriched by $700,000, the amount paid to him by IBC for his assumption of the liabilities and obligations associated with the Bridge, because he spent the money on "other projects" instead of using it to remove the Bridge. Norfolk asks the Court to require Plaintiff Barack to "raze, demolish, and remove" the Bridge, or, in the alternative, pay damages in an amount sufficient to compensate Norfolk for the continued refusal of Barack to

remove the structure.  Norfolk filed a Motion for Summary Judgment on these counterclaims on April 26, 2006.

### c. Dismissal of Norfolk as a Defendant

On June 13, 2006, after Norfolk filed its Counterclaim and Motion for Summary Judgment, this Court granted a Motion to Dismiss filed by Defendant Manchin, finding that Plaintiffs' Claim 5 is contingent upon the outcome of Claims 1 through 4, and thus not ripe for review.  Because Claim 5 was the only action brought against Defendants Manchin, Benwood, and Norfolk, this Court also dismissed them as defendants in this matter.

The Court's decision to dismiss Norfolk as a defendant, however, did not render moot Norfolk's Motion for Summary Judgement on its counterclaims against Plaintiff Barack, and Norfolk demonstrated affirmatively its desire to purse such counterclaims.  Plaintiffs filed a Response in Opposition to Norfolk's Motion for Summary Judgment on June 29, 2006, and Norfolk filed its Reply on July 14, 2006.  Accordingly, Norfolk's Motion for Summary Judgment is now ripe for this Court's review.

On August 2, 2006, Plaintiffs filed a Cross-Motion for Summary Judgment on Norfolk's Counterclaim for unjust enrichment.  Norfolk did not file a Response in Opposition, and the briefing deadlines have passed.  Accordingly, Plaintiff's Cross-Motion for Summary Judgment is now ripe for this Court's review.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits. . . ." *Id*. (citations omitted).

In evaluating motions for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In the case of cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft*, 929 F.2d at 248. The movant has the burden of establishing that there are no genuine issues of material fact, which

may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388-89 (6th Cir. 1993). Significantly, in responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-40 (6th Cir. 1993). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

Defendant/Counterclaim Plaintiff Norfolk urges this Court to grant Summary Judgment on its Counterclaims against Plaintiff/Counterclaim Defendant Barack.[4] In Claim I, Norfolk alleges that Barack breached his contract with Norfolk, and is responsible for razing, demolishing, and removing the remaining Bridge structures located in the State of Ohio and on and within property owned by Norfolk. In Claim II, Norfolk contends that because Barack

---

[4] For the sake of clarity, the Court will refer to the parties by their proper names, instead of by their role in the litigation.

received $700,000 from IBC for the specific purpose of demolishing the Bride and has thus far refused to do so, Barack has been unjustly enriched at the expense of Norfolk.

Barack and Midland, conversely, have asked this Court to grant Summary Judgment in their favor on Norfolk's unjust enrichment claim.  In addition, Barack and Midland assert that the Court should deny Norfolk's Motion for Summary Judgment on Claim I, because there is a genuine issue of material fact as to whether Barack has breached the Lease Agreement between the parties.

### A. Count I: Breach of Contract

Norfolk contends that Barack has a contractual duty under the Lease Agreement originally entered into by IBC and PRC to remove the remaining Bridge structure from Norfolk's property.  Because Barack has not done so, Norfolk asserts, he has breached the contract.  Norfolk seeks an order from this Court requiring that Barack remove the remaining Bridge structure, or in the alternative, pay Norfolk damages, in an amount ("to be proven at trial") sufficient to compensate Norfolk for Barack's continual refusal to remove the structures.  Barack and Midland assert that there is a genuine issue of material fact as to whether Barack has breached the Lease Agreement.

As Norfolk's counterclaims are based on state contract law, this Court will apply the substantive law of Ohio.  "Under Ohio law, if the language of a contract is clear and unambiguous, a court may not resort to construction of that language." *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.*, 212 F.3d 332, 336 (6th Cir.), *reh'g and sugg. for reh'g en banc denied*, (2000) (citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St. 3d 657, 665, 597 N.E.2d 1096, 1102 (1992), *cert. denied*, 507 U.S. 987, (1993)).  Ambiguity in the contract

exists only when a term cannot be ascertained from the four corners of the contract, or when the contract language is susceptible to two or more reasonable interpretations. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir.) *reh'g and sugg. for reh'g en banc denied*, (1999) (interpreting Ohio law). A contract is not ambiguous simply because the enforcement of its terms will cause hardship to one of the parties. *See New Market Acquisitions, Ltd., v. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1218 (S.D. Ohio 2001); *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth*., 78 Ohio St. 3d 353, 362, 678 N.E.2d 519, 526 (1997).

The primary purpose for judicial construction of an unambiguous contract is to ascertain and effectuate the intent of the parties. *See Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53, 544 N.E.2d 920, 923 (1989). If the terms of the contract are clear, the court shall presume that the parties' intent rests in the language of the agreement, and "the court shall apply the terms, not interpret them." *New Market Acquisitions,* 154 F. Supp. 2d at 1219 (citing *Foster Wheeler Enviresponse, Inc*., 78 Ohio St. 3d at 361, 678 N.E.2d at 526; *GenCorp, Inc*., 178 F.3d at 817-18 ).

Additionally, the interpretation of a written agreement is a matter of law for the court. *See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686 (1995). A question of fact for the jury arises only if the court determines that a contract term is ambiguous. *See GenCorp, Inc.,* 178 F.3d at 818 (interpreting Ohio law). Finally, a writing executed as part of the same transaction shall be read as a whole, and the intent of each section shall be ascertained from a consideration of the whole. *Foster Wheeler Enviresponse, Inc*., 78 Ohio St.3d at 361, 678 N.E.2d at 526.

The Lease Agreement in this case states that the land will be leased "throughout and during the period that [the lessee] shall use and require the [leased property] for location of its [proposed] pier."  The agreement provides that the lessee (here, Barack) must, at his own cost and expense, "construct, maintain, repair, renew, and ultimately remove" the Bridge and its structures from the land owned by the lessor (here, Norfolk).  Additionally, the agreement states that the lessor may "in its option at any time" perform the construction, maintenance, repairs or "ultimate removal" of the Bridge and the lessee is responsible for refunding the lessor, plus fifteen percent.  This Court finds that the language contained in Lease Agreement is clear and unambiguous.  As such, the Court can interpret the terms of the agreement as a matter of law; there is no question of fact for the jury.

The express terms of the Lease Agreement indicate that Barack agreed, pursuant to his assumption of the Lease Agreement under the IBC-Barack Purchase Agreement, to remove the Bridge or pay damages to Norfolk.  Under the clear terms of the contract, no reasonable jury could determine that Barack still uses or requires the leased property, as anticipated by the contracting parties, because: (1) the Bridge has not been operable as "highway and traction bridge" in over sixteen years; (2) ODOT has determined that it will not rebuild the Bridge ramp, nor will it allow Plaintiffs to do so;[5] and (3) the Coast Guard has repeatedly ordered Barack to remove the Bridge.

---

[5] Plaintiffs, of course, named ODOT officials in their original complaint, seeking a court order requiring ODOT officials to rebuilt the ramp or pay Plaintiffs for an "unconstituional taking."  The ODOT Defendants filed a Motion to Dismiss Plaintiffs claims, which this Court granted on December 28, 2006, thereby dismissing them as defendants in this matter.

Barack contends that he has breached the Lease Agreement only if he has failed to perform the promise to "*ultimately* remove" the Bridge, and that a jury could find that the performance of the promise to "ultimately remove" the Bridge has not yet become due. Specifically, Barack argues that because the Coast Guard's October 18, 1005 administrative order has been remanded (pursuant to the Coast Guard's Motion for Voluntary Remand in the consolidated action, *Barack v. Coast Guard*), the Coast Guard may determine that the Bridge is *not* an unreasonable waterway obstruction after all. In such a situation, Plaintiffs argue, Barack's contractual duty to "ultimately remove" the Bridge will not be ripe because there remains an opportunity to operate the Bridge if ODOT rebuilds the ramp or allows Plaintiff to rebuild the ramp.

This Court is not persuaded by Plaintiffs' argument. Barack's contractual duty under the Lease Agreement to "ultimately remove" the Bridge does not in any way depend on the Coast Guard's determination of whether the Bridge structure is an unreasonable obstruction to navigable waters. The parties' intent, under the plain meaning of the contract, gives no regard to any determinations made by the Coast Guard. In reading the contract as a whole, the term "ultimate removal" does not rely on outside determinations, but simply implies that, once the land is no longer being used for the Bridge, the lessee must remove the structure. Indeed, the Agreement allows for the lessor to "ultimately remove" the Bridge "*in its option at any time*;" if "ultimate" relied out outside findings by the Coast Guard or any other party, the lessor would not be able to remove the structure "in its option at any time."

The purpose of the Lease Agreement – to provide land to the lessee for its "highway and traction" Bridge – has been fulfilled. The Bridge has been non-functioning for years, and under

-13-

the agreement "for the protection and safety of the property owned . . . as well as the protection and safety of the employees, patrons and licensees" of Norfolk, Barack must now remove it. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Count I and hereby orders Plaintiff Barack to comply with the terms of the Lease Agreement.

### B.  Count II: Unjust Enrichment

Norfolk asserts that because Barack received $700,000 for assuming the obligations and liabilities with respect to the Bridge, including any destruction costs, but has not satisfied his removal duty, Barack has been unjustly enriched "at the expense of Norfolk Southern, which still bears the burden of that non-functional pier and bridge remaining on and over their property."

To prevail on a claim of unjust enrichment, a party must prove: "(1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 875 (S.D. Ohio 2006) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179 (1984)).

Under the doctrine of unjust enrichment, if the plaintiff did not confer the asserted benefit upon the defendant, the plaintiff is not entitled to judgment for unjust enrichment. *Id.* ("a benefit conferred *by a plaintiff* upon a defendant"); *Miller v. Keybank Nat'l. Ass'n.*, 2006 WL 871621 at *8 (Ohio Ct. App. Apr. 6, 2006).  In *Miller*, the son of a trustor sued the defendants for unjust enrichment after the trustor gave the defendants a portion of the trust property without exchange of consideration.  The court noted that the son *himself* did not confer any benefit to the defendants, and therefore, summary judgment on the unjust enrichment claim was granted in favor of the defendants.

In this case, Norfolk asserts that the benefit conferred upon Plaintiffs is a payment of $700,000 to Barack. That payment, which Barack does not dispute, was made pursuant to the Purchase Agreement between Barack and IBC. Barack received $700,000 for assuming IBC's liabilities and obligations, including removal costs, relating to the Bridge. Norfolk was not in any way a party to the Purchase Agreement and did not contribute to the $700,000 payment to Barack. In other words, Norfolk was not the party to confer the benefit on Barack. Norfolk has failed to establish that there is no genuine issue of material fact as to the first element of unjust enrichment – that a benefit was conferred by the plaintiff upon a defendant. In fact, Norfolk altogether fails to state a claim for unjust enrichment. Further, as stated below, Barack and Midland have established that there is no genuine issue of material fact that Norfolk *was not* the party to confer the benefit on Barack. Therefore, it is Plaintiffs, not Norfolk, who are entitled to Summary Judgment as a matter of law. Norfolk's Motion for Summary Judgment on Claim II is **DENIED**.

### C.  Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs not only ask this Court to deny Norfolk's Motion for Summary Judgment on the issue of unjust enrichment, but also urge this Court to grant Plaintiffs' Motion for Summary Judgment on the same claim because there is no genuine issue of material fact about whether Plaintiffs were unjustly enriched *by Norfolk*. Because Norfolk has failed to offer any evidence to establish this element of unjust enrichment–indeed, Norfolk states that the Barack was unjustly enriched by IBC–there is no genuine issue of material fact as to whether Plaintiffs were unjustly enriched by Norfolk. Indeed, Plaintiffs were not. Therefore, Plaintiffs' Motion for Summary Judgment is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, Counterclaim Plaintiff Norfolk's Motion for Summary Judgment is **GRANTED** with respect to Claim I and **DENIED** with respect to Claim II. In addition, Counterclaim Defendants Barack's and Midland's Cross-Motion for Summary Judgment is **GRANTED**.

    **IT IS SO ORDERED.**

                                                         s/Algenon L. Marbley
                                                         **ALGENON L. MARBLEY**
                                                         **UNITED STATES DISTRICT JUDGE**

**DATED:  March 30, 2007**