IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO MIDLAND, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 05-1097 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | Magistrate Judge Mark R. Abel |
| GORDON PROCTOR, Director, | : | |
| Ohio Dep't of Transp., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

### I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Ohio Midland, Inc. ("Midland") and Roger Barack's ("Barack") motion for a stay pending appeal. For the reasons set forth below, the Court hereby **GRANTS** Plaintiffs' motion pending their posting of a sufficient supersedeas bond to secure the stay. The Court further **ORDERS** the parties to file simultaneous briefs setting forth, and supporting with appropriate evidence, their respective positions regarding the amount of bond Plaintiffs should be required to post.

### II. BACKGROUND

#### A. Factual Background

This dispute centers on the fate of the Bellaire Bridge ("the Bridge") which spans the Ohio River connecting the City of Benwood, West Virginia with the City of Bellaire, Ohio. Construction on the Bridge began in 1925, and the Bridge was initially owned and operated by the now defunct Interstate Bridge Commission ("IBC"). IBC entered into an agreement ("Lease Agreement") with the Pennsylvania Railroad Company ("PRC"), a predecessor in interest to Counterclaimant Norfolk Southern Railway Company ("Norfolk"), whereby PRC agreed to lease

certain property to IBC for construction of the Bridge, and IBC agreed to bear all costs for the eventual removal of the Bridge from PRC's property, now owned by Norfolk.  In addition, the Lease Agreement granted the lessor, PRC, the right to have the Bridge removed at IBC's expense:

> It is understood and agreed between the parties hereto that for the protection and safety of the property owned or in possession, custody or control of, as well as the protection and safety of the employees, patrons and licensees of [PRC], [PRC] may in its option ***at any time*** . . . do and perform any or all work whether of the original construction, maintenance, repair, removal or ultimate removal of said bridge, pier . . . in or upon or over the property of [PRC], and in such event may furnish and provide any materials and supplies necessary therefore, and [IBC] covenants and agrees that it will promptly pay or refund the entire cost therefore, plus fifteen percent overhead to [PRC] upon rendition of proper bills therefore.

(emphasis added).

In 1990, the Ohio Department of Transportation ("ODOT") purchased the Bridge ramp on the Ohio side of the river from IBC and demolished the ramp to make way for a new state highway.  The Bridge was then rendered inaccessible and has since been, and currently remains, fully inoperable.  In 1991, Barack entered into an Asset Purchase and Liability Assumption Agreement ("Purchase Agreement") with IBC, whereby IBC transferred its property, including the Bridge, to Barack, who in exchange assumed "any obligation on the part of [IBC] to demolish, raze and remove the remaining bridge structure . . . and [a]ll future obligations under any assigned leases."[1]

## B.  Procedural Posture

---

[1] For a more detailed account of the factual history behind the dispute, see the March 30, 2007 Order (Doc. No. 137).

On March 30, 2007 this Court issued an order (Doc. No. 137) granting in part and denying in part Norfolk's motion for summary judgment on its counterclaim for breach of contract based on the Lease Agreement. In that order, the Court directed Barack to remove the Bridge from Norfolk's property. Barack has appealed the Court's ruling, and now moves for a stay pending disposition of his appeal. Norfolk does not object to the stay so long as Barack posts a supersedeas bond in an amount sufficient to satisfy the judgment now under appeal, that is, the amount necessary to raze the Bridge, plus post-judgment interest. Barack contends that the Court can and should exercise its discretion to grant the stay without compelling him to post a bond.

### III. ANALYSIS

The Federal Rules of Civil Procedure provide that an appellant who posts a satisfactory supersedeas bond is automatically entitled to a stay of the judgment. *See* Fed. R. Civ. P. 62(d); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (stating that "Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right").[2] In addition, the Sixth Circuit has held that district courts retain the discretion to grant stays in the absence of a bond. *See Arban*, 345 F.3d at 409.

Although district courts have the authority to dispense with the bond requirement, they generally decline to do so unless the stay applicant can show "extraordinary circumstances." *See*

---

[2] Rule 62(d) deals with stays of money judgments. Rule 62(c), on the other hand, pertains to stays of equitable judgments. *See Appalachian Reg'l Healthcare, Inc. v. Ky. Nurses Ass'n*, No. 06-150, 2007 U.S. Dist. LEXIS 515, *3-*4 (E.D. Ky. Jan. 5, 2007). The parties assume that Rule 62(d) applies here. Since Norfolk does not oppose a stay—provided Plaintiffs post a supersedeas bond—the Court will not pause to analyze whether its order instructing Plaintiffs to raze the Bridge is best characterized as legal or equitable in nature, and will instead apply the Rule 62(d) standard, as the parties have done in their briefing.

*Hoge v. Honda of Am. Mfg., Inc.*, No. 00-995, 2003 U.S. Dist. LEXIS 4068, *9 (S.D. Ohio March 3, 2003) (stating that "because Rule 62(d) requires posting a bond, the requirement should be waived only in 'extraordinary circumstances'"); *Verhoff v. Time Warner Cable, Inc.*, No. 05-7277, 2007 U.S. Dist. LEXIS 93312, *4 (N.D. Ohio Dec. 10, 2007) (stating that "numerous district courts, including this one, have held that a full supersedeas bond should almost always be required," except where "extraordinary circumstances" exist, and citing cases in support) (internal quotation marks omitted).

One way that an appellant may succeed in obtaining relief from the bond requirement is by showing that there is no doubt about its ultimate capacity to pay the judgment. In *Arban*, for example, the judgment at issue totaled $119,000, but the appellant established that it had annual revenues exceeding $2.5 billion. The Sixth Circuit held that the district court did not abuse its discretion in granting an unsecured stay given "the vast disparity between the amount of the judgment" and the appellant's annual revenues. 345 F.3d at 409; *but see Verhoff*, 2007 U.S. Dist. LEXIS 93312 at *7 (requiring appellant to post a bond even though the court found that it would "likely be able to satisfy the judgment"); *Appalachian Reg'l Healthcare, Inc.*, 2007 U.S. Dist. LEXIS 515 at *6 (same).

Financial hardship is a second ground on which some courts have waived the bond requirement. In such circumstances, the court "may provide for a substitute form of security." *Vaughan v. Memphis Health Ctr., Inc.*, No. 03-2470, 2006 U.S. Dist. LEXIS 49708, *3 (W.D. Tenn. July 20, 2006) (declining to waive the bond requirement for a healthcare provider merely on the basis of an affidavit from the provider's CEO stating that "the diversion of funds from providing healthcare . . . would most likely place [it] in a hardship position . . ."). The movant

4

may show either that it will suffer a financial hardship or that its other creditors will. *See e.g., Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 798 (7th Cir. 1986) (stating that it is within a district court's discretion to "balance the interest of [the appellant] as a judgment creditor against the interest of the other creditors of [the appellee] who might be harmed if [full bond were required]"); *Conwood Co., L.P. v. United States Tobacco Co.*, No. 98-108, 2000 U.S. Dist. LEXIS 12840, *3 (W.D. Ky. Aug. 10, 2000).

      The Court finds that the criteria for granting an unsecured stay, or for allowing Plaintiffs to post an alternative bond, are not satisfied. Plaintiffs have not demonstrated that they can easily satisfy the judgment, nor have they shown that posting a bond will unreasonably impair their financial interests or that of any other creditors they may have.

      There still remains the question of how much bond Plaintiffs should be ordered to post. Norfolk proposes two million dollars as a reasonable estimate of the costs associated with razing the Bridge from its property. Plaintiffs dispute this figure. Accordingly, the parties are instructed to file simultaneous briefs with the Court, identifying the amount of bond they assert is reasonable to protect Norfolk's interests as a judgment creditor, and further ordered to support their bond requests with appropriate evidence. The parties' briefing shall not exceed **five** pages in length (excluding evidentiary materials) and shall be filed no later than **Wednesday, March 26, 2008**.

      Finally, the Court will hold Norfolk's motion for relief pursuant to Rule 70 in abeyance, pending the Court's decision on the amount of bond Plaintiffs must post and Plaintiffs' actual posting of that bond.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' motion pending their posting of a sufficient supersedeas bond to secure the stay.  The Court will issue an order specifying the amount of bond that Plaintiffs must pay promptly upon reviewing the parties' briefing due on March 26, 2008.

**IT IS SO ORDERED.**

      s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: March 19, 2008**