IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO MIDLAND, INC., et al., | : | |
| Plaintiffs, | : | |
| | : | Case No. 2:05-cv-1097 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| PROCTOR, et al., | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before the Court following the order of the U.S. Court of Appeals for the Sixth Circuit, which remanded the case for further consideration on the issue of special master fees. On July 16, 2021, this Court ordered the parties to submit simultaneous briefing on the proper allocation of the master fees in accordance with Rule 53(g) of the Federal Rules of Civil Procedure. Counter Claimant Norfolk Southern Railway Co. filed its brief on July 30, 2021; the remaining parties—KDC Investments, LLC and the City of Benwood—did not submit briefing on this issue. The matter of special master fees is now ripe for this Court's consideration.

For thirty years, the Bellaire Bridge—connecting Bellaire, Ohio and Benwood, West Virginia—has been inoperable due to the demolition of a ramp on the Ohio side of the bridge. Ownership of the bridge itself has changed hands several times, with the idea that a new ramp could be built and the bridge reopened. Anyone seeking a more fulsome discussion of the Bellaire Bridge's history is directed to this Court's June 23, 2020 Opinion and Order. (ECF No. 248). After almost fifteen years of federal court litigation, this Court ordered KDC to demolish the Bellaire Bridge and divided the costs of the Special Master, David Kopech, to be split evenly between

KDC, the City of Benwood, and Norfolk Southern, with each party paying $8,420 of the overall $25,260.00 in Special Master fees. (*Id.*).

Norfolk Southern filed an appeal, challenging both the appointment of the Special Master and the allocation of master's fees. (ECF No. 249). The Sixth Circuit found that Norfolk Southern had waived its objection to the appointment of Mr. Kopech because it raised the issue for the first time on appeal. (ECF No. 254 at 5). In its Opinion, the Sixth Circuit did not disturb this Court's analysis as to the reasonableness of Mr. Kopech's fees. (*Id.* at 7). As to the allocation of Mr. Kopech's fees, however, the Sixth Circuit found that this Court had not provided sufficient explanation in accordance with Rule 53(g)(3) of the Federal Rules of Civil Procedure as to why it chose to allocate the fees as it did. (*Id.* at 6–7). The Sixth Circuit thus remanded the case solely on the issue of re-allocating the $25,260.00 in master's fees. (*Id.*).

Rule 53(g) of the Federal Rules of Civil Procedure governs compensation of special masters. In particular, Rule 53(g)(3) sets forth what factors a court must consider when allocating payment of master fees between parties. These factors include the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. Fed. R. Civ. P. 53(g)(3). Allocation of master fees is entrusted to the sound discretion of the district court. *See Hart v. Cmty. Sch. Bd. of Brooklyn, N.Y. Sch. Dist. #21*, 383 F. Supp. 699, 767 (E.D.N.Y. 1974) (citing *Newton v. Consol. Gas Co.*, 259 U.S. 101 (1922)). Under Rule 53(g), a court may allocate the fees solely to one party or amongst multiple parties as it sees fit. *See United States v. City of New York*, 847 F. Supp. 2d 395, 435 (E.D.N.Y. 2012) (assessing fees to one party after performing Rule 53(g)(3) analysis); *see also* 9C Arthur R. Miller, et al., *Federal Practice and Procedure* § 2608 (3d ed.) (noting that current text of Rule

53(g) permitted court to charge master's fees only to party "whose unreasonable behavior occasioned the need for an appointment").

Norfolk Southern was the only party to submit a brief on the proper allocation of fees under Rule 53(g)(3). Norfolk Southern argues that the nature of the dispute and the relative responsibility of the parties for appointment to a special master counsel in favor of assigning the fees to KDC alone or, in the alternative, KDC and the City of Benwood. (ECF No. 256 at 2–3). Norfolk Southern suggests that the most important factor in allocating fees in this case is the responsibility for assignment to a special master in the first place, which it submits is wholly attributable to KDC. (*Id.* at 3–4). Norfolk Southern also argues that its efforts to enforce the demolition order of the bridge served the public interest and therefore it should be protected from payment obligations. (*Id.* at 3).

On first glance, the Rule 53(g) factors could counsel in favor of assigning responsibility of the master fees to KDC alone. This controversy has remained ongoing because several entities, including KDC, have failed to demolish the Bellaire Bridge. Since 2006, Norfolk Southern has argued for the demolition of the bridge and even claims that it provided $700,000 to previous owners of the bridge to do so. (ECF No. 68 at 9–10). As early as 2007, this Court has found that a contract between Norfolk Southern and previous owners required removal of the bridge by said previous owners. (ECF No. 137). Norfolk Southern continued to seek demolition of the bridge. In 2011, KDC joined this litigation, having taken ownership over the Bellaire Bridge. (ECF Nos. 184–85). As a result, this Court extended the demolition deadline to November 30, 2012. (ECF No. 191).

In the interim, KDC failed to post an appropriate bond to the City of Benwood for demolition, further delaying the process. (ECF No. 195). In February 2013, this Court held KDC

in contempt for failing to take steps to apply for the bond. (ECF No. 206). Eventually, KDC's delay in obtaining the bond led the City of Benwood to intervene as a party. (ECF Nos. 227, 232). The City of Benwood, however, refused to lower the requirements for a permit or allow KDC to begin work on the bridge without the bond. (ECF Nos. 212–14). This Court then found KDC's owner, Lee Chaklos, in contempt. *United States v. Chaklos*, No. 2:13-cr-206 (ECF Nos. 31, 43). In 2014, KDC's counsel withdrew from the litigation. (ECF Nos. 233–34). In 2017, this Court appointed Mr. Kopech, as no progress on the bridge's demolition had been made. In February 2019, this Court ordered the parties to resolve the case by March 31, 2019, yet no solution was reached. Thus, this Court again ordered KDC to demolish the Bellaire Bridge. (ECF No. 248).

KDC's continued failure to arrange for demolition after taking ownership over the Bellaire Bridge contributed substantially to the need for a special master in this case. Absent from Norfolk Southern's analysis on this point, however, is the issue of KDC's insolvency. (ECF No. 236). KDC's insolvency is one of the primary reasons the bridge has yet to be demolished. (*Id.*). Requiring KDC to pay the master fees appears largely futile and could result in Mr. Kopech being left holding the bill, so to speak, for the time and labor invested as a special master. Norfolk Southern has sought consistently the demolition of the Bellaire Bridge, which it argues is a matter of public interest that should result in it being shielded from the master fees. Compensation of special masters, who perform substantial work for the benefit of this Court and the public, is also a matter of public importance. Rule 53(g) also instructs this Court to consider the means of the parties in allocating master fees.

At an earlier status conference, it was conceded that—at most—15 percent of the bridge is under the control of Norfolk Southern, with the remainder being on the West Virginia side of the river. Norfolk Southern will thus be allocated fifteen percent of the master fees, or $3,789, with

the remaining amount of $21,471 being divided evenly between KDC and City of Benwood, or $10,735.50 each. While KDC may be most responsible for reference to a special master, the issue in controversy and the other parties' means or ability to recoup the costs, counsels in favor of the aforementioned allocation of fees. The mere fact that this Court may allocate responsibility for master fees to a single party consistent with Rule 53(g)(3) does not mean it is obligated to do so. In sum, the balancing of the equities and the necessary Rule 53(g)(3) factors do not support wholly allocating the fees to KDC alone as it remains unlikely that the master fees will ever be paid at all and all parties involved, who purport to seek the public safety, should support the compensation of a special master whose participation in this matter serves the public interest.

For the foregoing reasons, the parties are hereby **ORDERED** to pay costs **within sixty (60) days** to the Special Master David Kopech as follows: Norfolk Southern to pay **$3,789.00** and KDC and the City of Benwood each to pay **$10,735.50**.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  August 25, 2021**